IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ATLANTIC PIER ASSOCS., LLC, et al., | : : | CIVIL ACTION NO. 08-4564 |
| Plaintiffs, | : : : | |
| v. | : : | |
| BOARDAKAN REST. PARTNERS, et al., | : : : | |
| Defendants. | : : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                                    August 20, 2009

I.   BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . -3-

     A.  Defendants . . . . . . . . . . . . . . . . . . . . . -3-

     B.  Lease Agreements . . . . . . . . . . . . . . . . . . -6-

     C.  Lease Amendments . . . . . . . . . . . . . . . . . . -8-

     D.  Procedural History . . . . . . . . . . . . . . . . -10-

II.  MOTIONS TO DISMISS . . . . . . . . . . . . . . . . . . -11-

     A.  Legal Standard . . . . . . . . . . . . . . . . . . -12-

     B.  Motion to Dismiss - Personal Jurisdiction . . . . -13-

     C.  Motion to Dismiss - Parol Evidence . . . . . . . . -19-

         1. Parol Evidence - Choice-of-Law . . . . . . . . -19-

         2. Parol Evidence - Application . . . . . . . . . -26-

III. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . -39-

1

Pending before the Court are four motions to dismiss the fraud, negligent misrepresentation, civil conspiracy, and promissory estoppel claims filed by Boardakan Restaurant, LLC and Oceanental Restaurant, LLC, the operators of two Steven Starr restaurants, Buddakan and Continental, respectively (hereinafter "Starr Plaintiffs").  The motions are filed by the following Defendants:[1] (1) Defendant Atlantic Pier Associates, LLC ("APA") (doc. no. 20); (2) Defendants TRG The Pier, LLC ("TRG The Pier"), The Taubman Realty Group, L.P. ("TRG"), and Taubman Centers, Inc. ("TCI") (doc. no. 21); (3) Defendants Gordon Group Holdings, LLC ("GGH"), Pier Developers, Inc. ("Pier Developers"), Peter J. Fine, Sheldon Gordon, and Scott Gordon (doc. no. 22); and (4) Defendant APA (doc. no. 41).[2]

For the reasons that follow, the motions to dismiss filed by Defendants APA, GGH, Pier Developers, Peter J. Fine, Sheldon Gordon, and Scott Gordon (doc. nos. 20, 22, and 41) will be denied with prejudice.  The motion to dismiss filed by

---

[1]     For a full characterization of Defendants and their relationships to each other, see supra p. 3-5.

[2]     The first motion to dismiss filed by APA (doc. no. 20) is a motion to dismiss Starr Plaintiffs' Complaint.  The second motion to dismiss filed by APA (doc. no. 41) is a motion to dismiss Starr Plaintiffs' counterclaim which alleges identical causes of action to Starr Plaintiffs' Complaint (fraud, negligent misrepresentation, civil conspiracy, and promissory estoppel) and incorporates the Complaint by reference.  APA's second motion to dismiss incorporates the reasoning and arguments contained in APA's first motion to dismiss.

Defendants TRG Pier, TRG and TCI (doc. no. 21), will be denied
without prejudice.


I.  BACKGROUND

        This case is the consolidation of a landlord/ tenant
dispute and tort action.  On September 18, 2008, APA initiated an
action against Starr Plaintiffs, seeking the recovery of past-due
rent.  On April 16, 2009, Starr Plaintiffs initiated an action
against APA, TRG Pier, TRG, TCI, GGH, Pier Developers, Peter J.
Fine, Sheldon Gordon, and Scott Gordon, alleging fraud, negligent
misrepresentation, civil conspiracy, and promissory estoppel.  On
April 20, 2009, the Court consolidated these cases (doc. no. 15).
Both actions relate to agreements to lease and operate
restaurants at the "Pier at Caesar's" (the "Pier") in Atlantic
City, New Jersey.

        A.   Defendants

        For the purposes of organization and clarity, a brief
discussion of Defendants and their relative relationships is
helpful.  On May 1, 2003, Defendant Pier Developers, Inc. ("Pier
Developers")[3] entered into a Ground Lease with the entity that

_____

        [3]    Defendant Pier Developers is a Delaware Corporation
with its principal place of business in Connecticut.  Starr Pls.'
Compl. at ¶ 35.

owns Caesar's Palace Casino, and thus, became the initial landlord of "the Pier," an area used to develop a high-end mall on a pier over the beach in Atlantic City.

On January 31, 2005, pursuant to an Operating Agreement, Defendants Pier Developers and TRG The Pier, LLC ("TRG The Pier"), a real estate investment limited liability company, formed a Delaware limited liability company known as Atlantic Pier Associates, LLC ("APA").  Defendant Pier Developers then transferred its interest in the Pier to Defendant APA, making APA the landlord of the Pier.

Pursuant to the APA Operating Agreement, Defendant TRG The Pier owned thirty percent of APA and was a minority member; Defendant Pier Developers owned seventy percent of APA and was a managing member.  In April 2007, the management structure of APA changed when TRG The Pier obtained an additional fifty percent in APA, increasing its equity interest in the Pier to seventy percent, and making TRG The Pier the managing member of APA, and Pier Developers the minority member.  (Aff. Chris B. Heaphy, TRG The Pier, at ¶ 8).

Pier Developers and TRG The Pier are both owned and controlled by separate entities, also named as Defendants in this

-4-

case.  First, Pier Developers is a subsidiary of Defendant Gordon
Group Holdings, LLC, ("GGH") a developer in the retail and
entertainment industries owned by Defendant Sheldon Gordon.
Defendants Scott Sheldon and Peter Fine are employees of GGH.
Second, TRG The Pier is a wholly owned subsidiary of Defendant
The Taubman Realty Group, L.P., ("TRG") a Delaware limited
partnership.  Defendant Taubman Centers, Inc. ("TCI"), a public
Real Estate Investment Trust, owns a sixty-five percent managing
general partnership interest in TRG and conducts all its
operations.

A representation of the relationships among Defendants
is illustrated as follows.

```
                    +-------------------+
                    |  Atlantic Pier    |
                    |  Associates, LLC  |
                    |      [APA]        |
                    +-------------------+
```

*Membership interest held by:*

```
+---------------------+        +---------------------+
| Managing Member:    |        | Minority Member:    |
|                     |        |                     |
| TRG The Pier        |        | Pier Developers,    |
|                     |        | Inc.                |
| +-----------------+ |        | +-----------------+ |
| | TRG, with       | |        | | Sheldon         | |
| | business        | |        | | Gordon, GGH,    | |
| | conducted by    | |        | | and related     | |
| | general partner | |        | | entities        | |
| | TCI             | |        | +-----------------+ |
| +-----------------+ |        +---------------------+
+---------------------+
```

For the purposes of discussion, the Court has grouped the Defendants in three categories: (1) Landlord Defendant, consisting of Defendant APA; (2) APA Minority Member Defendants, consisting of Defendants Pier Developers, GGH, Peter J. Fine, Sheldon Gordon, and Scott Gordon; and (3) APA Managing Member Defendants, consisting of Defendants TRG The Pier, TRG, and TCI.

B.   <u>Lease Agreements</u>

On May 1, 2003, Pier Developers, as the initial landlord at the Pier, sought to attract tenants for the Pier.  On March 13, 2004, Pier Developers entered into substantially identical leases with two Steven Starr restaurants, Buddakan and Continental ("the Leases").  The Leases contained several important clauses implicated in this case: (1) integration

clause;[4] (2) delay in delivery clause;[5] and (3) counterclaim clause (noting that Tenant's covenant to pay rent is an independent covenant)[6].  Importantly, the Leases contained no provisions with respect to other tenants which would occupy the Pier (absence of "Co-tenancy Clause").  The premises leased for the Starr restaurants were delivered pursuant to the Leases, by correspondence dated November 1, 2005.

Pier Developers entered into two similar leases with entities that would do business as "RumJungle" and "English is Italian" (both restaurants were the creation of restauranteur Jeffrey Chodorow). These leases contained clauses which required Pier Developers to construct a substantial part of the space that

---

[4]    Paragraph 24.3 - "There are no representations, covenants, warranties, promises, agreements, conditions or undertakings, oral or written, between Landlord and Tenant other than herein set forth.  Except as herein otherwise provided, no subsequent alteration, amendment, change or addition to this Lease shall be binding upon Landlord or Tenant unless in writing, signed by them and approved by Landlord's mortgagee."

[5]    Paragraph 24.20 - "[i]n the event that a Commencement Date shall not have occurred within two years after the effective date of this lease (unless such failure shall be due to Tenant's fault), then this Lease shall automatically become null and void and both parties hereto shall be relieved of all obligations hereunder."

[6]    Paragraph 18.3 - " . . . [t]he covenants to pay rent and other amounts hereunder are independent covenants and tenant shall have no right to hold back, offset or fail to pay any such amounts for default by landlord or any other reason whatsoever, it being understood and acknowledged by tenant that tenant's only recourse is to seek an independent action against landlord."

"RumJungle" and "English is Italian" would occupy.  Starr Pls.'
Compl. Exs. C & H, at ¶ 3.1.  In addition, these leases provided
for automatic termination in the event that costs exceeded an
agreed upon amount.[7]  The premises leased for "RumJungle" and
"English is Italian" were delivered pursuant to the agreements,
by correspondence dated October 31, 2005.

On November 11, 2005, a representative from the
Chodorow entities sent identical letters to APA on behalf of
"RumJungle" and "English is Italian," indicating that the tenant
costs for both restaurants exceeded the amount specified in the
agreements, and thus, the restaurants had a right to terminate
the lease under ¶ 3.3(9).  Although the termination dates for
both agreements had passed, the letter indicated that the
Chodorow entities "shall deem the Lease[s] terminated and of no
further effect."

C.   Lease Amendments

---

[7]     Specifically, these leases provided the following.  As
to "RumJungle," in the event that "RumJungle"'s building costs
exceeded $7.2 million, either party could terminate the lease
"upon ten days notice, developed no later than January 15, 2005."
Starr Pls.' Compl. Ex. C. at ¶ 3.3(9).  On March 31, 2005, APA
entered into an Amended Lease with "RumJungle," extending the
termination date in ¶ 3.3(9) until July 15, 2005.

As to "English is Italian," in the event that "English
is Italian"'s building costs exceeded $3,177,200, either party
could terminate the lease "upon ten days written notice to the
other, delivered no later than August 1, 2005."  Starr Pls.'
Compl. Ex. H., ¶ 3.3(9).  This date was never formally amended.

On November 9, 2005, Starr wrote to APA[8] expressing
"uncertainty" with respect to the May 15, 2006 grand opening for
the Pier.  Starr requested a "detailed schedule showing the
percentage of the [Pier] under binding leases and the parties
thereto."  In response, on December 16, 2005, Peter Fine of GGH
responded by letter, attaching a list of tenants "with executed
leases and leases in negotiation with the Pier at Caesars in
Atlantic City."  Included in this list were "RumJungle" and
"English is Italian."  In January 2006, Starr became further
concerned with a perceived lack of progress with respect to other
tenants in the Pier.  According to Starr, during a meeting with
APA, APA again represented that "RumJungle" and "English is
Italian" were "definitely opening."

According to Starr, based on these representations,
Starr entered into Amended Leases with APA, supplying a new
Commencement Date.  Pursuant to the Amended Leases, the
Commencement date was defined as follows: "The earlier of (i) the
later ("Later Date") of (a) the date Sonsie and Phillips Seafood
and at least seventy five percent (75%) of the rentable floor
area of the Center to be occupied by other retail tenants open
for business and (b) September 1, 2006, which Later Date is

---

[8]    At this point, APA had assumed the role of landlord of
the Pier, pursuant to the Operating Agreement.

hereinafter called the 'Required Completion Date,' or (ii) the day on which Tenant opens for business." Starr Pls.' Compl. Exs. P & Q, at ¶ 1. The Amended Leases also contained a "Co-tenancy Clause" which addressed the parties' rights with respect to other businesses which may open at the Pier.[9] In addition, the Amended Leases provided Starr with an option to terminate the Amended Leases if certain conditions were not satisfied.[10]

    D. <u>Procedural History</u>

On June 25, 2008, Starr Plaintiffs filed a Pracecipe to Issue Writ of Summons and Notices for the Pre-Complaint Production of Documents and Discovery, pursuant to Pennsylvania

---

[9]     The clause provided: "In the event Tenant shall open for business prior to the date that at least five of the seven additional restaurants at the Center (to be occupied by Sonsie, Phillips Seafood, English is Italian, Game On, Dubliner, RumJungle and one additional restauranteur or by other restaurant of comparable quality) are open for business (the "Co-tenancy") . . ., tenant shall pay to Landlord starting with the Commencement Date and continuing during the period the Co-Tenancy has not been satisfied (the "Interim Rent Period"), in lieu of Minimum Monthly Rent, Percentage Rent and any and all other charges or sums that are payable under this Lease . . ., an amount equal to five percent of all Gross Sales generated at the Premises during the period the Co-Tenancy is not satisfied." Starr Pls.' Compl. Exs. P & Q, at ¶ 24.24.

[10]     The clause provided: "In the event that (i) the Co-Tenancy is not satisfied; and (ii) at least seventy five percent of the rentable floor area of the Center to be occupied by other retail tenants is not open for business, by December 31, 2006, tenant shall have the right to terminate this Lease upon written notice to the Landlord delivered no later than January 15, 2006." Starr Pls.' Compl. Exs. P & Q, at ¶ 24.24.

Rules of Civil Procedure 1007 & 4007.1(c)-(d), in the
Philadelphia County Court of Common Pleas, naming the same
Defendants as named in the instant case.  During pre-complaint
discovery for the state court action, Starr ceased paying rent
owed to APA under the Amended Leases.  This state action has
since been withdrawn.[11]

On September 18, 2008, APA filed this action,
predicated upon diversity of citizenship, against Starr
Plaintiffs to enforce the covenants to pay rent.  On April 16,
2009, Starr Plaintiffs filed a tort action against Landlord
Defendant, APA Managing Member Defendants, and APA Minority
Member Defendants, alleging fraud, negligent misrepresentation,
civil conspiracy, and promissory estoppel.  As previously noted,
on April 20, 2009, the Court consolidated these cases (doc. no.

---

[11]     On July 23, 2008, APA and the remaining Defendants
named in the Writ of Summons before the Philadelphia County Court
of Common Pleas, filed a Notice of Removal, seeking to remove the
action to federal court based on diversity of citizenship
jurisdiction under 28 U.S.C. § 1446.  On July 31, 2008, Starr
Plaintiffs filed a motion to remand, arguing that Defendants'
removal to federal court was premature as a matter of law because
Starr Plaintiffs had yet to file a complaint in the state court.
Following a hearing on these motions, the Court granted Starr
Plaintiffs' motion to remand, relying upon the Third Circuit's
decision in Sikirica v. Nationwide Ins. Co., 416 F.3d 214, 233
(3d Cir. 2005) (holding that "a writ of summons alone can no
longer be the 'initial pleading' that triggers the 30-day period
for removal under the first paragraph of 28 U.S.C. §1446(b)").
Accordingly, the case returned to Philadelphia County Court of
Common Pleas.  However, following pre-complaint discovery, Starr
Plaintiffs did not proceed to file a complaint in the matter.

15).

II.  MOTIONS TO DISMISS (Doc. nos. 20, 21, 22, 41)

There are two threshold issues in the instant motions to dismiss.  First, APA Managing Member Defendants claim that the Court lacks personal jurisdiction to consider Starr Plaintiffs' claims against these specific Defendants.  Second, Landlord Defendant, APA Managing Member Defendants, and APA Minority Member Defendants contend that the alleged representation that "RumJungle" and "English is Italian" would "definitely open" is barred by the parol evidence rule, and in the absence of this representation, Starr Plaintiffs fail to state claims for fraud, negligent misrepresentation, civil conspiracy, and promissory estoppel.  The Court considers each issue in turn.

A.  <u>Legal Standard</u>

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  In deciding a motion to dismiss for failure to state a claim upon which relief can be granted, the Court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party."  <u>DeBenedictis v. Merrill Lynch & Co., Inc.</u>, 492

F.3d 209, 216 (3d Cir. 2007) (quotation omitted).  The Court need
not, however, "credit either bald assertions or legal conclusions
in a complaint when deciding a motion to dismiss."  Id.
(quotation omitted).  The "'[f]actual allegations must be enough
to raise the right to relief above the speculative level.'"
Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008)
(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 & n.3
(2007)).

    The United States Supreme Court recently elaborated on
the plausibility standard enunciated in Twombly.  See Ashcroft
v. Iqbal, 129 S. Ct. 1937, 1949-52 (2009) (applying Twombly to
all civil actions).  Iqbal specifically commented on the "[t]wo
working principles" from Twombly.  129 S. Ct. at 1949.

> First, the tenet that a court must accept as true all of the
> allegations contained in a complaint is inapplicable to
> legal conclusions.  Threadbare recitals of the elements of a
> cause of action, supported by mere conclusory statements, do
> not suffice.  Rule 8 marks a notable and generous departure
> from the hypertechnical, code-pleading regime of a prior
> era, but it does not unlock the doors of discovery for a
> plaintiff armed with nothing more than conclusions.  Second,
> only a complaint that states a plausible claim for relief
> survives a motion to dismiss.  Determining whether a
> complaint states a plausible claim for relief will . . . be
> a context-specific task that requires the reviewing court to
> draw on its judicial experience and common sense.  But where
> the well-pleaded facts do not permit the court to infer more
> than the mere possibility of misconduct, the complaint has
> alleged – but it has not "shown" – "that the pleader is
> entitled to relief."

Id. at 1949-50 (citations omitted).

B.   Motion to Dismiss - Personal Jurisdiction

APA Managing Member Defendants argue that Starr
Plaintiffs' claims must be dismissed against moving Defendants
because APA Managing Member Defendants are not subject to
personal jurisdiction in Pennsylvania.  TRG The Pier is the
managing member of APA, current landlord of the Pier; it is a
Delaware limited liability company with its principal place of
business is Michigan.  TRG is the sole member of TRG The Pier;
TRG is a Delaware limited partnership with its principal place
of business is Michigan.  TCI is a general partner in TRG; it is
a Michigan corporation with its principal place of business in
Michigan.

A federal district court may exercise jurisdiction to
the same extent as the state in which it sits; a state, in turn,
may exercise jurisdiction over a non-resident defendant pursuant
to its so-called "long-arm statute."  Because the reach of
Pennsylvania's long-arm statute "is coextensive with the limits
placed on the states by the federal Constitution," the court
looks to federal constitutional doctrine to determine whether
personal jurisdiction exists over Defendants.  Vetrotex
Certainteed Corp. v. Consol. Fiber Glass Prods. Co., 75 F.3d
147, 150 (3d Cir. 1996); 42 Pa. C.S.A. § 5322(b).

The Due Process Clause of the Fourteenth Amendment

-14-

requires that non-resident defendants have "certain minimum contacts with [the forum states] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Marten v. Finchuam, 499 F.3d 290, 296 (3d Cir. 2007) (citing Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). Minimum contacts with another state provides "fair warning" to a defendant that he or she may be subject to suit in that state. Id. (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985)). These basic due process principles are reflected in the two distinct types of personal jurisdiction: (1) general jurisdiction; and (2) specific jurisdiction. Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 414-16 (1984).

First, general jurisdiction does not require the defendant's contacts with the forum state to be related to the underlying cause of action, Helicopteros, 466 U.S. at 414, but the contacts must have been "continuous and systematic." Id. at 416.

Second, specific jurisdiction is established when the basis of the "plaintiff's claim is related to or arises out of the defendant's contacts with the forum." Pennzoil Products Co. v. Colelli & Assoc., Inc., 149 F.3d 197, 201 (3d Cir. 1998) (citations omitted). In determining whether specific

-15-

jurisdiction exists, the Court is guided by a three-part inquiry.  First, the defendant must have "purposefully directed" his activities at the forum.  <u>Marten</u>, 499 F.3d at 296 (citing <u>Burger King</u>, 471 U.S. at 472).  Second, the plaintiff's claim must "arise out of or relate to" at least one of those specific activities.  <u>Id.</u> (citing <u>Helicopteros</u>, 466 U.S. at 414).  Third, courts may consider additional factors to ensure that the assertion of jurisdiction would comport with traditional conceptions of fair play and substantial justice.  <u>Id.</u> (citing <u>Burger King</u>, 471 U.S. at 476 and <u>Int'l Shoe Co.</u>, 326 U.S. at 320).

Here, APA Managing Member Defendants contend that the Court has neither general, nor specific jurisdiction over them. Once a defendant raises a jurisdictional defense, as Defendants have in this case, the plaintiff bears the burden of coming forward with enough evidence to establish, with reasonable particularity, sufficient contacts between the defendant and the forum state.  <u>Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Assoc.</u>, 819 F.2d 434, 437 (3d Cir. 1987).  "The plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence. . . . [A]t no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss

for lack of in personam jurisdiction." <u>Patterson v. F.B.I.</u>, 893 F.2d 595, 604 (3d Cir. 1990).  "Once the motion is made, plaintiff must respond with actual proofs not mere allegations." <u>Id.</u>

Starr Plaintiffs have requested jurisdictional discovery to sustain their burden in establishing personal jurisdiction.  Although plaintiff bears the burden of demonstrating facts that support personal jurisdiction, the Third Circuit instructs that courts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is clearly frivolous.  <u>Toys "R" Us, Inc. v. Step Two, S.A.</u>, 318 F.3d 446, 456 (3d Cir. 2003) (citing <u>Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n</u>, 107 F.3d 1026, 1042 (3d Cir. 1997)).  If a plaintiff presents factual allegations that suggest "with reasonable particularity" the possible existence of the requisite "contacts between [the party] and the forum state," <u>Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino</u>, 960 F.2d 1217, 1223 (3d Cir. 1992), plaintiff's right to conduct jurisdictional discovery should be sustained. <u>Toys-R-Us, Inc.</u>, 318 F.3d at 456.

Here, Starr Plaintiffs contend that APA Managing Member Defendants, acting in concert with the other named Defendants,

-17-

directed harm toward Pennsylvania residents by participating in the misrepresentations which form the basis of Starr Plaintiffs' fraud, negligent misrepresentation, civil conspiracy, and promissory estoppel claims.[12]  Specifically, Starr Plaintiffs argue that APA Managing Member Defendants, aware of the fact that "English is Italian" and "RumJungle" had terminated their agreements, "consented and approved the notification to Starr that there [were] binding leases to get him [Starr] to sign an amendment when he had no lease obligation at all."  August 7, 2009, Hr'g Tr. 38:14-17.  In support of this theory, Starr Plaintiffs allege the existence of the following: (1) "e-mail strings" between moving Defendants and other named Defendants, August 7, 2009, Hr'g Tr. 33:23-24; (2) "bi-weekly notices of [project] status," Id. at 36:6-7; (3) "copies of letters to counsel for the landlord [detailing termination of "English is Italian" and "RumJungle" contracts]," Id. at 36:17-18; and (4) documents with "Taubman's handwriting all over [them] from Sheldon Gordon, making him aware that they don't have financing to open the stores."  Id. at 37:18-20.

Based upon these factual allegations and the alleged

---

[12]    Starr Plaintiffs allege that "[the moving Defendants] were directing the harm into Pennsylvania and defrauding Pennsylvania residents and Pennsylvania parties. . . ."  August 7, 2009, Hr'g Tr. 33:21-23.

existence of documentation supporting such allegations, Starr
Plaintiffs have alleged "with reasonable particularity" the
possible existence of the requisite contacts between the moving
Defendants and the Commonwealth of Pennsylvania.  Thus, Starr
Plaintiffs are entitled to jurisdictional discovery before the
Court makes its final determination as to whether it can
exercise jurisdiction over APA Managing Member Defendants.

        Where personal jurisdiction is at issue, the court "is
powerless" to adjudicate on the merits.  Ruhrgas AG v. Marathon
Oil Co., 526 U.S. 574, 584 (1999) (noting personal jurisdiction
is "an essential element of the jurisdiction of a district . . .
court, without which the court is powerless to proceed to
adjudication") (quoting Employers Reinsurance Corp. v. Bryant,
299 U.S. 374, 382 (1937)).  Accordingly, before personal
jurisdiction is established over APA Managing Member Defendants,
the Court declines to proceed to the merits to determine, as to
these Defendants, whether the misrepresentation alleged by Starr
Plaintiffs is barred by the parol evidence rule.

        C.  Motion to Dismiss - Parol Evidence

        Landlord Defendant and APA Minority Member Defendants
contend that the alleged representation that "RumJungle" and
"English is Italian" would "definitely open" is barred by the
parol evidence rule, and in its absence, Starr Plaintiffs fail to

-19-

state claims for fraud, negligent misrepresentation, civil conspiracy, and promissory estoppel.  As to these Defendants, unlike the APA Majority Member Defendants, there is no claim that the Court lacks personal jurisdiction and therefore the Court proceeds to the merits.

>    1.   Parol Evidence Rule - Choice-of-law

As a preliminary matter, the Court must determine which state law governs the application of the parol evidence rule in this case.  Starr Plaintiffs argue that New Jersey law applies because there is an actual conflict between the construction of the parol evidence rule under Pennsylvania and New Jersey law, and under the Pennsylvania choice-of-law analysis, New Jersey law applies.[13]  In contrast, Defendants

---

[13]   Although the Starr Leases contained a New Jersey choice-of-law provision (Starr Pls.' Compl. Exs. A & B, ¶ 24.17), this provision is not an agreement to apply New Jersey law to the instant tort claims.  However, in briefing submitted to the Court, Starr Plaintiffs argue that the parties subsequently agreed upon the application of New Jersey law to the tort claims at issue, and thus no choice-of-law analysis is necessary.

Under Pennsylvania choice-of-law rules, "the first question to be answered in addressing a potential conflict of laws dispute is whether the parties explicitly or implicitly have chosen the relevant law." Assicurazioni Generali, S.P.A. v. Clover, 195 F.3d 161, 164 (3d Cir. 1999).  Generally, if the parties have agreed to the applicable law, that agreed upon law should be given effect.  Id.

Here, Starr Plaintiffs contend that during a prior status and scheduling conference, the parties agreed that New Jersey law would apply.  April 16 2009, Hr'g Tr. 15:21-22.

argue that there is no actual conflict between the application of the parol evidence rule under Pennsylvania and New Jersey law, and thus the law of the forum state, Pennsylvania, governs.

Where federal jurisdiction is based on diversity of citizenship, as it is here, the Court must apply the choice-of-law rules for the state in which it sits. Hammersmith v. TIG Ins. Co., 480 F.3d 220, 226 (3d Cir. 2007) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487 (1941)). Because this Court sits in the Eastern District of Pennsylvania, Pennsylvania choice-of-law rules apply.

If the parties have not agreed upon a choice of law, Pennsylvania employs a two-step process to resolve choice-of-law questions. Hammersmith, 480 F.3d at 229. First, the court must

---

Specifically, Starr Plaintiffs point to the following communications to support this alleged choice of law agreement: COURT: What law would apply, New Jersey law or have you thought about that? MEYERS: Well, the lease says New Jersey law – COURT: yes. MEYERS: and I presume that is going to control. ROSEN: I'm not opposing that. COURT: Okay. So, there is some agreement as of now that New Jersey law will control. MEYERS: Apparently, Your Honor. COURT: Both the fraud and the breach of contract. MEYERS: I believe so, Your Honor. ROSEN: I don't disagree. April 16 2009, Hr'g Tr. 15:13-25; 16:1-8.

Based upon the Court's review of the April 16, 2009 transcript, any concrete "agreement" to apply New Jersey law is questionable. In "agreeing" to apply New Jersey law, Defendant uses words and phrases which imply uncertainty (i.e. "I believe so", "I presume"). On these facts, the Court is unable to classify these communications as an agreement to apply New Jersey law. Accordingly, the Court proceeds to Pennsylvania's choice-of-law analysis.

determine if there is a real conflict.  Id.  There is no real conflict where the application of either state's law renders the same result.  Berg Chilling Sys., Inc. v. Hull Corp., 435 F.3d 455, 462 (3d. Cir. 2006).  If there is no difference between the laws of the forum state and those of the foreign jurisdiction, the court may bypass the choice-of-law issue, rely interchangeably on the law of both states, and presume the law of the forum state controls.  Hammersmith, 480 F.3d at 229.

However, if there is a conflict, the court proceeds to the second step and characterizes the conflict as "true," "false," or "unprovided for."  Id. at 230.  A "true" conflict exists where both states have an interest in applying their own law.  Id.  A "false" conflict exists when only one state has an actual interest in applying its law.  Id.  The situation is "unprovided for" when neither state has an interest in applying its own law.  Id.  "'A deeper [choice of law] analysis' is necessary only if both jurisdictions' interest would be impaired by the application of the other's laws (i.e., there is a true conflict)."  Id. (citing Cipolla v. Shaposka, 267 A.2d 854, 856 (Pa. 1970)).

Where there is a true conflict, the court must determine "which state has the greater interest in the application of its law."  Id. at 231.  This inquiry employs a

combination of "the approaches of both [the] Restatement II
(contacts establishing significant relationships) and 'interest
analysis' (qualitative appraisal of the relevant States' policies
with respect to the controversy).'" Id. (citing Melville v.
American Home Assurance Co., 584 F.2d 1306, 1311 (3d Cir. 1978)).
"This analysis requires more than a "mere counting of contacts."
Id.  The court must "weigh the contacts on a qualitative scale
according to their relation to the policies and interests
underlying the [particular] issue."  Id. (citing Shields v.
Consol. Rail Corp., 810 F.2d 397, 400 (3d Cir. 1987)).

        Turning to the choice-of-law analysis here, Starr
Plaintiffs argue that an actual conflict exists between the
application of the parol evidence rule under Pennsylvania and New
Jersey law, as applied to fraud-in-the-inducement.[14]
Specifically, Starr Plaintiffs highlight two "relevant"
differences in the states' application of the parol evidence
rule: (1) New Jersey law "permit[s] a broad use of extrinsic

---

    [14]    Fraud-in-the-inducement occurs where "the party
proffering evidence of additional prior representations does not
contend that the representations were omitted from the written
agreement, but rather, claims that the representations were
fraudulently made and that 'but for them' he would never have
entered into the agreement."  Blumenstock v. Gibson, 811 A.2d
1029, 1036 (Pa. Super. Ct. 2002).  Here, Starr Plaintiffs claim
fraud-in-the-inducement because they argue that they entered into
the Amended Leases based upon the contention that "RumJungle" and
"English is Italian" were "definitely opening."

evidence to uncover the true meaning of contractual terms,"
Conway v. 287 Corporate Center Assocs., 901 A.2d 341, 346 (N.J.
2006), while Pennsylvania law does not allow extrinsic evidence
to explain terms in the contract, Youndt v. First Nat. Port of
Allegheny, 868 A.2d 539, 546 (Pa. Super. Ct. 2005); and (2) New
Jersey law does not permit issues of parol evidence to be decided
on a motion to dismiss, Conway, 901 A.2d at 346, while
Pennsylvania law does so allow.[15]  The Court considers and
rejects each potential difference in turn, and concludes that no
conflict exists.

First, the alleged distinction with respect to the use
of extrinsic evidence to explain contract terms is not framed
entirely accurately by Starr Plaintiffs.  In fact, Pennsylvania
law, like New Jersey law, permits the use of extrinsic evidence

---

[15]    In addition, Starr Plaintiffs note that a true conflict
exists with respect to the statute of limitations for fraud
claims.  Specifically, Pennsylvania applies a two year statute of
limitations to fraud claims, 42 Pa.C.S. § 5524, while New Jersey
applies a six year statute of limitations, NJ Stat. § 2A:14-1.

The choice of law analysis is issue-specific and
different states' laws may apply to different issues in a single
case.  Berg Chilling Sys. Inc., 435 F.3d at 462 (describing
principle known as "depecage").  At this juncture, the Court
considers the choice of law analysis as applied to the
application of the parol evidence rule.  Because the statute of
limitations for fraud claims does not impact the application of
the parol evidence rule, the Court need not consider this
potential distinction at this time.

to "explain or clarify" an ambiguous contract term.  Yocca v. Pittsburgh Steelers Sports, Inc., 854 A.2d 425, 437 (Pa. 2004). Notably, New Jersey law allows extrinsic evidence to explain contract terms "even when the contract on its face is free from ambiguity," Conway, 901 A.2d at 347 (citing Atl Ne. Airlines v. Schwimmer, 96 A.2d 652 (N.J. 1953)), while Pennsylvania requires ambiguity as a prerequisite to the admission of extrinsic evidence, Yocca, 854 A.2d at 437.

While the Court recognizes a distinction in that New Jersey allows more liberal usage of extrinsic evidence to explain contract terms than Pennsylvania, this distinction is not implicated on these facts.  Here, Starr Plaintiffs seek to admit parol evidence to: (1) explain the alleged ambiguity in the Co-tenancy Clause; and (2) admit evidence of a prior misrepresentation to show fraud-in-the-inducement.  Under these circumstances, because Starr Plaintiffs contend that a contract term is ambiguous, either application of Pennsylvania or New Jersey law would allow parol evidence to explain the ambiguity. Accordingly, because either law would render the same result, there is no conflict on this ground.

Second, Starr Plaintiffs' contention that New Jersey courts do not apply parol evidence at the motion to dismiss stage

is inaccurate.[16]  In fact, both Pennsylvania and New Jersey
courts allow final disposition based upon the parol evidence rule
at the motion to dismiss stage.  See Genesis Bio-Pharmaceuticals,
Inc. v. Chiron Corp., 98-2445, 2000 U.S. Dist. LEXIS 21852, at
*18-20 (D.N.J. Aug. 30, 2000), aff'd, 27 Fed. Appx. 94 (3d Cir.
2002) (applying New Jersey law and finding plaintiff failed to
state fraud claim where parol evidence barred introduction of
oral representation which occurred prior to fully integrated
contract); Bray v. Dewese, 07-4011, 2008 U.S. Dist. LEXIS 17540,
*6-8 (E.D. Pa. Mar. 6, 2008) (applying Pennsylvania law and
holding plaintiff failed to state fraud-in-the-inducement claim
where parol evidence barred introduction of misrepresentation
which occurred prior to integrated contract); Foxmoor Movie
Theater, Inc. v. Rayasam, 07-0195, 2008 U.S. Dist. LEXIS 4462,
*10-13 (M.D. Pa. Jan. 18, 2008) (same).

        Accordingly, because there is no conflict between the

---

[16]     Moreover, Starr Plaintiffs' reliance upon Conway is
misplaced.  Contrary to Starr Plaintiffs' citation to Conway to
support the contention that "New Jersey courts do not permit
issues of parol evidence to be decided on a motion to dismiss,"
Conway does not stand for this proposition.  As previously noted,
Conway held that New Jersey law allows parol evidence to explain
contract terms "even when the contract on its face is free from
ambiguity," 901 A.2d at 347 (citing Atl Ne. Airlines v.
Schwimmer, 96 A.2d 652 (N.J. 1953)).  However, Conway did not
suggest that a court could not decide issues of parol evidence
offered to vary, modify, or supplement a written agreement at the
motion to dismiss stage.

application of the parol evidence rule under Pennsylvania and New Jersey law, the Court will apply Pennsylvania and New Jersey law interchangeably, and presume the law of the forum state, Pennsylvania, controls.

### 2.  Parol Evidence Rule - Application

Where prior fraudulent representations are alleged, the parol evidence rule bars such representations where the written agreement: (1) contains terms which directly deal with the subject matter of the alleged oral representation; and (2) represents the entire contract between the parties, particularly where the written agreement also contains an integration clause. 1726 Cherry St. P'ship v. Bell Atlantic Props., 653 A.2d 663, 666 (Pa. Super. Ct. 1995) (citing Bardwell v. The Willis Co., 100 A.2d 102 (1953)); see also Wall v. CSX Transp., Inc., 471 F.3d 410, 418 (2d Cir. 2006) (tracing history of parol evidence rule in Pennsylvania as applied to fraud-in-the-inducement claims).[17]

---

[17]    "Notably, while parol evidence may be introduced based on a party's claim that there was a fraud-in-the-execution of the contract, i.e., that a term was fraudulently omitted from the contract, parol evidence may not be admitted based on a claim that there was fraud-in-the-inducement of the contract, i.e., that an opposing party made false representations that induced the complaining party to agree to the contract."  Yocca, 854 A.2d 425, 437 n.26 (citing HCB Contractors v. Liberty Place Hotel Assocs., 652 A.2d 1278, 1279 (Pa. 1995)).  Here, Starr Plaintiffs claim fraud-in-the-inducement because they argue that Starr entered into the Amended Leases based upon the contention that "RumJungle" and "English is Italian" were "definitely opening."

Pennsylvania intermediate courts have applied the parol evidence rule where only the integration element of the two-fold inquiry is satisfied.[18]  This approach appears to be in conflict with the Pennsylvania Supreme Court's explicit instruction that both requirements must be established before the parol evidence rule operates to bar evidence of fraud-in-the-inducement.  See Yocca, 854 A.2d at 438 (requiring both integration and "same subject matter" before parol evidence rule is considered to bar prior misrepresentations); HCB Contractors v. Liberty Place Hotel Assocs., 652 A.2d 1278, 1279 (Pa. 1995) (same).  Accordingly, the Court considers each requirement ad seriatim.

First, the Court considers whether the Amended Leases directly dealt with the alleged oral representations ("RumJungle" and "English is Italian" were "definitely opening").  Defendants, argue that the Amended Leases "directly deal" with the subject matter of the oral representation because the addition of the co-tenancy clause in the Amended Leases anticipates the presence or absence of "RumJungle" and "English is Italian."  In contrast, Starr Plaintiffs contend that the Amended Leases do not "directly

---

[18]    See Greylock Arms, Inc. v. Kroiz, 879 A.2d 864, 868 (Pa. Commw. Ct. 2005) (finding "the parol evidence rule bars proof of fraudulent inducement to a contract where the contract is fully integrated," without analyzing whether the same subject matter was addressed in the written agreement); Heritage Surveyors & Eng'rs, Inc. v. Nat'l Penn Bank, 801 A.2d 1248, 1252 (Pa. Super. Ct. 2002) (same).

deal" with the subject matter of the oral representation because the Amended Leases do not expressly contradict the representation, but rather, are silent as to whether "RumJungle" or "English is Italian" were in binding leases to open at the Pier.

Pennsylvania law does not construe the "same subject matter" requirement as Starr Plaintiffs submit.  To satisfy the "same subject matter" requirement, the written contract need not directly contradict the prior representation, but rather need only "relate to subjects that were specifically addressed in the written contract."  HCB Contractors, 652 A.2d at 1279-80; Nicolella v. Palmer, 248 A.2d 20, 22 (Pa. 1968).

In Nicolella, the plaintiff submitted a construction bid, calculated based upon the defendant's architectural plans and speculations, to construct an addition to a food market.  248 A.2d at 21.  Following the submission of the bid, but before execution of the contract, the plaintiff inquired as to any material changes in the architectural plans which would affect the contract price.  Id.  The defendant advised the plaintiff that no material changes had occurred, and noted that if material changes arose, the contract price would be adjusted accordingly.  Id. at 22.  Following these communications, the parties executed a fully integrated contract to construct the addition for the

compensation named in the original bid.  Id. at 22.  Later, the
plaintiff learned that the architectural plans had materially
changed, but defendant refused to modify the contract price.  Id.
The plaintiff brought a fraud action, alleging that defendant was
aware of the material architectural changes at the time of his
representations to plaintiff and fraudulently induced plaintiff
to enter the contract.  Id.

The Pennsylvania Supreme Court found that defendant's
prior representations concerning potential changes to the
contract price were barred by operation of the parol evidence
rule.  Id.  The court concluded that these representations
directly related to the written contract because the written
contract dealt with the contract price generally.  Id.
Importantly, the court did not require that the written contract
explicitly contradict the prior representation in order to
satisfy the "same subject requirement."  Id.

Similarly, in HCB Contractors, the Pennsylvania Supreme
Court found that a prior representation indicating that owners of
certain properties would refrain from transferring property
interests related to the subject addressed in the written
contract because the contract contained a "waiver of lien" clause
which provided that owners may transfer their interests to new
owners.  652 A.2d at 1279.  Although the plain language of the

written contract <u>did</u> expressly contradict the prior representation, the court, relying on <u>Nicolella</u>, did not mandate express contradiction in order to satisfy the "same subject matter" requirement.  <u>Id.</u> (concluding "HCB's claims relate to subjects that were specifically addressed in the written contract," and later noting ". . . in fact, [the plain language of the contract] negates HCB's assertions. . .").[19]

          Here, while the Co-tenancy Clause does not explicitly negate the alleged representation that "Rum Jungle" and "English is Italian" would "definitely open," the clause anticipates and structures the parties' rights and responsibilities based upon the presence or absence of "Rum Jungle" and "English is Italian." Specifically, the clause allows for reduced rent if "at least five (5) of the seven (7) additional restaurants at the Center (to be occupied by Sonsie, Phillips Seafood, 'English is Italian,' Game On, Dubliner, 'RumJungle' and one additional

---

          [19]     The Court recognizes that some confusion surrounds the "same subject matter" requirement as at least one Pennsylvania intermediary court has interpreted the requirement to mandate express contradiction.  <u>See</u> <u>Youndt</u>, 868 A.2d at 546 (noting "when the contract contains no such term denying the existence of such representations, parol evidence is admissible to show fraud in the inducement").  Despite that the <u>Youndt</u> Court suggests that express contradiction is necessary to satisfy the "same subject matter" requirement, the Pennsylvania Supreme Court has not construed the "same subject matter" in this narrow way. Accordingly, the Court rejects the construction of "same subject matter" articulated in <u>Youndt</u>.

restaurateur or by other restaurants of comparable quality)" are not open for business by the opening of the Starr restaurants. Because of this language in the Co-tenancy Clause, the written contract directly relates to the subject matter of the prior representation, the "same subject matter" requirement is satisfied.

Second, turning to the integration requirement, Starr Plaintiffs argue that the Amended Leases do not constitute fully integrated contracts. In contrast, Defendants argue that the Amended Leases are fully integrated contracts by operation of incorporation of the integration clauses contained in the original Leases.

To determine whether or not a writing is the parties' entire contract, the court determines "if [the writing] appears to be a contract complete within itself, couched in such terms as import a complete legal obligation without any uncertainty as to the object or extent of the [parties'] engagement. . ." Yocca, 854 A.2d at 436. An integration clause which states that a writing is meant to represent the parties' entire agreement is also a clear sign that the writing is meant to be just that and thereby expresses all of the parties' negotiations, conversations, and agreements made prior to its execution. Id.

Here, the original Starr Leases contained an

-32-

integration clause; the Amended Leases did not repeat the integration clause.  However, the Amended Leases incorporated all unchanged provisions of the original Leases, and the original integration clauses were unchanged.  The Pennsylvania Supreme Court has not addressed whether an incorporation clause in an amended lease, which purports to incorporate all the terms of the original lease, unless otherwise modified by the amended lease, has the effect of applying the integration clause contained in the original lease as of the time of the execution of the amended lease.

Various appellate level courts have spoken on the issue, but have not done so in depth.  First, under these circumstances, the Commonwealth Court of Pennsylvania held that where an amended lease did not modify the integration clause contained in the original lease, the integration clause of the original lease applied to the amended lease as to the date of execution of the amended lease.  Greylock Arms v. Kroiz, 879 A.2d 864, 867 (Pa. Commw. Ct. 2005).[20]  Because of the application of

_____

[20]    Defendants note that the Southern District of New York considered this issue and reached the same conclusion as the Greylock court.  Hanson v. McCaw Cellular Commc'ns, 881 F. Supp. 911, 916 (S.D.N.Y. 1995).  In Hanson, a seller and buyer executed an option contract for the sale of interest in a cellular telephone system.  Id. at 913.  The option contract was fully integrated, by way of an integration clause, and contained a "sale or transfer clause," providing that a price adjustment would ensue if the buyer sold his interest within a five year

the integration clause in the original lease to the amended

lease, the court held that the amended lease was fully integrated

and precluded evidence of fraud-in-the-inducement to modify the

original lease.  Id.[21]

---

period from the closing date.  Id.  Subsequent to this option
contract, the parties executed an amendment, increasing the time
period to trigger a price adjustment from five to six years from
the closing date.  Id. at 914.  The integration clause was not
repeated in the amendment.  Id. at 916.

     Following the execution of the lease amendment, a
dispute arose as to the parties' interpretation of the "sale or
transfer clause," and more specifically, as to the appropriate
trigger for price adjustment.  Id. at 915.  The seller sought to
introduce evidence (of the parties' intentions in amending the
contract) to explain the allegedly ambiguous "sale or transfer
clause;" the buyer argued that this evidence was barred by the
parol evidence rule.  Id. at 916.  Despite that the amended
agreement did not contain a separate integration clause, the
seller conceded that the agreement was fully integrated.  Id.
Justifying the concession, the court briefly noted that the
integration clause need not be repeated to extend its application
to the amendment.  Id.  In addition, the court cited independent
evidence of the parties' intent for the option agreement and
amendment to be the "exclusive embodiment of the contract."  Id.

     Hanson is distinguishable from this case.  Here, unlike
in Hanson, the parties are in dispute as to whether the Amended
Leases are fully integrated.  In addition, unlike the independent
evidenced cited by the Hanson Court, here, Defendants have not
pointed to independent evidence of the parties' intention that
the Amended Leases be the "exclusive embodiment" of the
agreements.

     [21]  In a letter to the Court, Starr Plaintiffs contend that
the Second Circuit, applying Pennsylvania law, "examined Greylock
in the context of the Pennsylvania parol evidence rule, and found
that Greylock was an incorrect statement of Pennsylvania law."
Wall, 471 F.3d at 419 & note 7.  Contrary to Plaintiffs'
assertions, the Second Circuit did not engage in such an
examination of Greylock on this specific question.  Wall cited

In contrast, four years later, the Pennsylvania Superior Court held that an amended lease was not fully integrated, despite the fact that the original lease contained an integration clause and the amended lease noted "all terms and conditions of the Lease not inconsistent with this Amendment shall remain in full force and unchanged hereby." Giant Food Stores, LLC v. Silver Spring Dev., 959 A.2d 438, 446 (Pa. Super. Ct. 2008).

In Giant, a landlord and tenant executed a lease for retail space in a shopping center; the lease contained an integration clause, barring consideration of prior representations, and a "supermarket restriction" clause, prohibiting the landlord from ownership interest in an establishment engaged in the sale of groceries within three miles of the leased premises. Id. at 440 & 446. Following the execution of the lease, the tenant ceased operation of the

---

Greylock as an example of a case where the Pennsylvania Commonwealth Court failed to employ the "two-fold requirement of same subject matter and integration" in order to implicate the parol evidence rule. Id. at 419. Rather, the Greylock Court applied the parol evidence rule based on the satisfaction of one requirement only, that is, the fact that the amended contract was fully integrated. Id.

Although Wall criticized Greylock for failure to employ both prongs of the analysis, it did not criticize or comment upon the Greylock Court's conclusion that the Amended Contract was fully integrated by operation of the incorporation clause.

grocery store, but sought to maintain the restrictive covenant and sublease the premises. Id. at 445. The landlord was amenable to the sublease, but requested a limited exclusion to the supermarket restriction which would allow a separate tenant to expand its retail business to include grocery sales. Id.

Following these communications, the parties executed two written letter agreements addressing the term of the lease, permission for the sublease, supermarket restriction, and exclusion to the restriction. Id. at 446. Later, the parties executed an amended lease, memorizing the changes articulated in the prior written letter agreements; the amended lease did not contain an integration clause. Id. When a dispute as to the supermarket restriction arose, the landlord argued that the court could only consider the amended lease and original lease to determine the intent of the parties. Id. The landlord argued that the amended lease was fully integrated, by operation of incorporation of the integration clause in the original lease, and thus the two written agreements executed in the time between the original and amended leases were excluded as parol evidence. Id.

The Giant Court rejected the landlord's argument and found that the amended lease was not fully integrated by incorporation of the integration clause in the original lease.

-36-

Id.  The Superior Court, without acknowledging the Commonwealth Court's decision in Greylock, reasoned that because the integration clause in the original lease discounted any oral or written statements made prior to the execution of the original lease, the incorporation of the integration clause in the amended lease did "nothing more than preserve the integration clause of the Lease Agreement as it relates to oral and written statements made prior to the Lease Agreement."  Id. at n.4.  Accordingly, a separate inquiry was necessary to determine whether the amended lease was fully integrated.  Id. at 447.  In this inquiry, the Court concluded that the amended lease was not fully integrated and that the two written agreements were intended to be read in conjunction with the amended lease.  Id.

Because the Pennsylvania Supreme Court has not offered guidance to justify the conflicting holdings of Greylock and Giant, the Court is left to predict the future of Pennsylvania law on the effect of incorporating an integration clause, by reference, into a subsequent amended lease.  The Court is persuaded by the Pennsylvania Superior Court in Giant.

As the Giant court suggested, an integration clause is temporal in nature, and thus, the timing of its execution will necessarily limit its effect.  Here, the integration clause contained in the original Leases indicates that on the date of

-37-

execution of the Leases, "there [were] no representations, covenants, warranties, promises, agreements, conditions or undertakings, oral or written, between Landlord and Tenant other than set forth herein."  Starr Pls.' Compl. Exs. A & B, § 24.3. The incorporation of this term into the Amended Leases operates to preserve the original integration clause, and preclude evidence of oral or written communications which occurred <u>prior</u> to the execution of the original lease.  However, mere incorporation of this term does not extend, ipso facto, the temporal reach of the integration clause to the time period between the execution of the original Leases to the execution of the Amended Leases.  Consequently, the Amended Leases do not contain a clause fully integrating the Leases during the time between the execution of the original Leases and the execution of the Amended Leases.

In the absence of a separate integration clause in the Amended Leases, and without the benefit of discovery, the Court is unable to determine whether the Amended Leases are fully integrated to preclude evidence of fraud-in-the-inducement, by operation of the parol evidence rule, to modify the original Leases.  See <u>Rendon v. Ragans</u>, 08-1665, 2009 U.S. Dist. LEXIS 45127, at *20 (W.D. Pa. May 29, 2009) (finding it "not yet appropriate to determine whether the writings . . . [were a]

final and complete expression . . .[given] that no discovery
[had] taken place to date"). Because the parol evidence rule
does not bar consideration of the representations alleged by
Starr Plaintiffs, the Court cannot conclude that Starr Plaintiffs
have failed to state claims for fraud, negligent
misrepresentation, civil conspiracy, and promissory estoppel.
Accordingly, the motions to dismiss filed by Landlord Defendant
and APA Minority Member Defendants will be denied.[22]

------

[22]    To the extent the Landlord Defendant and APA Minority
Member Defendants argue that the alleged misrepresentation is not
barred by the parol evidence rule, but rather constitutes an
invalid modification to the Starr Leases, this argument is also
unavailing at the motion to dismiss stage.  Defendants argue that
because the parties agreed that modifications could only be made
in writing, any contention that the oral misrepresentation
(namely, that "RumJungle" and "English is Italian" would
"definitely open") modified the original lease, is without merit.
Specifically, in the original leases, the parties agreed,
"[e]xcept as herein otherwise provided, no subsequent alteration,
amendment, change or addition to this Lease shall be binding upon
Landlord or Tenant unless in writing, signed by them and approved
by Landlord's mortgagee."  Starr Pls.' Compl. Exs. A & B., ¶
24.3.

        Under Pennsylvania law, an agreement that prohibits
non-written modification may be modified by subsequent oral
agreement if the partes' conduct clearly shows the intent to
waive the requirement that the amendments be made in writing.
Accu-Weather v. Prospect Commc'ns., 644 A.2d 1251, 1255 (Pa.
1994).  However, an oral contract modifying a prior written
contract must be proven by "clear, precise and convincing
evidence."  Somerset Cmty. Hosp. v. Mitchell & Assocs., Inc., 685
A.2d 141, 146 (Pa. Super. Ct. 1996) (citing Pellegrene v. Luther,
169 A.2d 298, 299 (Pa. 1961)).

        Accordingly, at the motion to dismiss stage, an oral

III.  CONCLUSION

For the reasons set forth above, the motion to dismiss filed by APA Managing Member Defendants (doc. 21) will be denied without prejudice.  Starr Plaintiffs will be afforded the opportunity to conduct jurisdictional discovery to establish the Court's jurisdiction over APA Managing Member Defendants.  Before the resolution of the Court's jurisdiction over APA Managing Member Defendants, the Court declines to determine, as to these Defendants, the applicability of the parol evidence rule to bar the misrepresentations alleged by Starr Plaintiffs.

The motions to dismiss filed by Landlord Defendant and APA Minority Member Defendants (doc. nos. 20, 22, and 41), predicated upon the parol evidence rule, are denied with prejudice.  Appropriate orders follow.

---

modification to the written lease is not per se invalid.  Starr Plaintiffs are entitled to discovery to prove that the conduct of the parties shows an intent to orally amend the contract.