# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ATLANTIC PIER ASSOCIATES, LLC, et al.,<br>          Plaintiffs,<br><br>  v.<br><br>BOARDAKAN RESTAURANT PARTNERS L.P., et al.,<br>          Defendants. | CIVIL ACTION<br><br>No. 08-4564 |

Pollak, J.                                                                                            August 2, 2010

## OPINION

      This matter includes two consolidated actions between (1) certain tenants at The Pier Shops ("the Pier") in Atlantic City, New Jersey, and (2) their landlord, Atlantic Pier Associates, LLC ("Atlantic Pier") and related entities. In one action, Atlantic Pier has sued Boardakan Restaurant Partners, L.P. and Oceanental Partners, L.P., which own and operate two restaurants at the Pier, for unpaid rent. In the other, the restaurants ("plaintiffs") have sued Atlantic Pier and a number of other defendants, alleging that the defendants fraudulently induced them into entering their leases at the Pier. Three of the defendants named in the tenants' complaint are TRG The Pier, LLC ("TRG Pier"), a

1

Delaware limited liability company which holds a membership interest in Atlantic Pier[1];
Taubman Realty Group Limited Partnership ("TRG"), a Delaware limited partnership
which owns 100% of TRG Pier; and Taubman Centers, Inc. ("TCI"), a real estate
investment trust incorporated under Michigan law which owns 67% of TRG. TCI, TRG,
and TRG Pier (collectively, "defendants") now move to dismiss the tenants' claims
against them for lack of personal jurisdiction, pursuant to Rule 12(b)(2) of the Federal
Rules of Civil Procedure.[2]

## I.

This court "exercises personal jurisdiction according to the law of the state where it sits." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007). 42 Pa. Cons. Stat. § 5301(a) sets out "relationships between a person and this Commonwealth [that] constitute a sufficient basis of jurisdiction to enable the tribunals of this Commonwealth to exercise general personal jurisdiction over such person." For corporate parties, three relationships are expressly listed in the statute: (1) "[i]ncorporation under or qualification as a foreign corporation under the laws of this Commonwealth," (2) "[c]onsent," and (3) "[t]he carrying on of a continuous and systematic part of its general business within this Commonwealth." *Id.* § 5301(a)(1)(I)-

---

[1] TRG Pier owned a 30% stake in Atlantic Pier at the time the latter was formed and increased its interest Atlantic Pier to 77.5% in April 2007.

[2] An oral argument regarding this motion was held on July 15, 2010. At that argument, I granted defendants' motion to file a supplemental brief in support of their Rule 12(b)(2) motion.

2

(iii). The statute specifies that "[w]hen jurisdiction over a person is based upon this section any cause of action may be asserted against him, whether or not arising from acts enumerated in this section," and that "[d]iscontinuance of . . . acts [including qualification as a foreign corporation] shall not affect jurisdiction with respect to any act, transaction or omission occurring during the period such status existed." *Id.* § 5301(b).

It is undisputed that TCI was qualified to do business as a foreign corporation in Pennsylvania from January 1993 until May 22, 2006. *See* Defs.' Ex. 5, at 1. Pursuant to § 5301(b), this court may therefore exercise jurisdiction over TCI for "any act, transaction or omission" that occurred during that thirteen-year interval, even though it is no longer qualified to do business in Pennsylvania. According to the allegations in plaintiffs' complaint, which are taken as true for purposes of a Rule 12(b)(2) motion, *see, e.g.*, *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002), the fraud perpetrated against the plaintiffs began on November 1, 2005 and continued into 2007. This court therefore has jurisdiction over TCI with regard to that subset of fraudulent acts that occurred between November 1, 2005 and May 22, 2006.

The question then becomes whether or not TCI is also amenable to jurisdiction for actions allegedly taken after May 22, 2006. The only Pennsylvania-based court to consider this question has held that where "the great bulk of the acts and omissions of which plaintiff complains occurred during a period of time in which" the defendant remained registered, jurisdiction based on the registration is proper for all of the acts in

3

the complaint. *Fischman v. Fischman*, 470 F. Supp. 980, 982 (E.D. Pa. 1979). In the context of this case, the *Fischman* rule is sensible: Plaintiffs have alleged a fraud which began while TCI was qualified to do business in Pennsylvania and which had the singular, ongoing purpose of inducing plaintiffs to enter into leases and open restaurants at the Pier. Given these allegations of a unitary, continuing fraudulent scheme, and assuming that the bulk of the fraud occurred while TCI remained a qualified foreign corporation, exercising jurisdiction over TCI only for acts occurring before May 22, 2006 would be an exercise in artificiality untethered from the concerns of the due process clause.

Moreover, as in *Fischman*, the allegations of the complaint reveal that the bulk of the alleged fraud did, in fact, occur before TCI's registration as a foreign corporation was terminated. Plaintiffs allege that, before May 2006, (1) the fraud was initiated, (2) defendants induced plaintiffs to take the affirmative act of committing to open restaurants at the Pier, (3) defendants misrepresented the status of other proposed Pier ventures on several occasions, and (4) defendants' actions delayed the opening of plaintiffs' restaurants. *See* Compl. ¶¶ 74-113. The post-May 22, 2006 actions of which plaintiffs complain are, by contrast, no more than a perpetuation of the previous misrepresentations undertaken by defendants while plaintiffs completed and opened their restaurants. *See id.* ¶¶ 114-24. TCI's act of registering to do business in Pennsylvania therefore subjects it to personal jurisdiction in this case.

Defendants attempt to resist this conclusion by arguing that "Plaintiffs have not presented evidence of 'any act, transaction or omission' *by TCI* that gave rise to their claims." Defs.' Mem. at 29 (quoting 42 Pa. Cons. Stat. § 5301(b)). This argument may be read in two ways: either as (1) a claim that the complaint includes no allegations against TCI, or (2) an assertion that, for jurisdiction to be proper, TCI must have taken some "act, transaction or omission" in Pennsylvania causally connected to this lawsuit. Read the first way, defendants' argument misreads the complaint, which alleges that TCI participated, with a number of other entities, in fraudulently inducing the plaintiffs to enter their leases. Read the second way, meanwhile, defendants' argument misapprehends the relevant law. It is only when a court exercises specific personal jurisdiction over a defendant that "[t]he plaintiffs' claims must . . . 'arise out of or relate to' at least one of" the defendant's "purposeful contact[s] with the forum." *O'Connor*, 496 F.3d at 318 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). But in *Bane v. Netlink, Inc.*, 925 F.2d 637 (3d Cir. 1991), the Third Circuit held that a corporation which "register[ed] to do business in Pennsylvania" both "purposefully avail[ed] itself of the privilege of conducting activities within the forum State" and "consent[ed] to be sued in the Pennsylvania courts." *Id.* at 640 (internal quotation marks omitted). *Bane* then specifically refused to parse "the dichotomy between 'general' and 'specific' jurisdiction," *id.*; rather, it "flatly held that when a foreign corporation registers to do business in Pennsylvania, a court may constitutionally

5

exercise jurisdiction over that defendant." *RX Returns, Inc. v. PDI Enters., Inc.*, No. 97-cv-1855, 1997 WL 330360, at *2 (E.D. Pa. June 6, 1997). Accordingly, defendants' argument is without merit, and this court has personal jurisdiction over TCI.

## II.

In addition to listing specific bases for jurisdiction, Pennsylvania's long-arm statute provides that "the jurisdiction of the tribunals of this Commonwealth shall extend to all persons . . . to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa. Cons. Stat. § 5322(b). It is well settled that a court may exercise personal jurisdiction, consistent with the Constitution, over a corporate entity that is the alter ego of a party over which jurisdiction is proper. *See, e.g.*, *Simeone ex rel. Estate of Albert Francis Simeone, Jr. v. Bombardier-Rotax GmbH*, 360 F. Supp. 2d 665, 675 (E.D. Pa. 2005).

"A subsidiary will be considered the alter ego of its parent only if the parent exercises control over the activities of the subsidiary." *Oeschle v. Pro-Tech Power, Inc.*, No. 03-cv-6875, 2006 WL 680908, at *4 (E.D. Pa. Mar. 15, 2006) (internal quotation marks omitted). This control must be "greater than normally associated with common ownership and directorship," and be over "day-to-day operations of the subsidiary such that the subsidiary can be said to be a mere department of the parent." *Id.* (internal quotation marks omitted). Courts in this district consider a range of factors "when

6

determining if a subsidiary is an alter[] ego . . . of the parent," including the following:

> (1) ownership of all or most of the stock of the subsidiary; (2) common officers and directors; (3) a common marketing image; (4) common use of a trademark or logo; (5) common use of employees; (6) an integrated sales system; (7) interchange of managerial and supervisory personnel; (8) subsidiary performing business functions which the principal corporation would normally conduct through its own agents or departments; (9) subsidiary acting as marketing arm of the principal corporation, or as an exclusive distributor; and [(]10) receipt by officers of the related corporation of instruction from the principal corporation.

*Id.*; *accord, e.g.*, *Gammino v. Verizon Commc'n, Inc.*, No. 03-cv-5579, 2005 WL 3560799, at *3 (E.D. Pa. Dec. 27, 2005) (Green, J.); *In re Latex Gloves Prods. Liab. Litig.*, No. MDL 1148, 2001 WL 964105, at *4 (E.D. Pa. Aug. 22, 2001). The purpose of the inquiry is to determine "whether there is a single functional and organic identity." *Oeschle*, 2006 WL 680908, at *4 (internal quotation marks omitted). Plaintiffs bear the burden of demonstrating this identity, *see, e.g.*, *Simeone*, 360 F. Supp. 2d at 675, and argue that both TRG and TRG Pier are alter egos of TCI.

## A.

In the case of TRG, there is ample evidence to support alter ego status under the first two factors of the multi-factor test. As to the first factor, TRG is a direct, though not wholly-owned, subsidiary of TCI, which owns 67% of TRG and is TRG's managing partner. Pls.' Ex. 7, at 27; Pls.' Ex. 8, at 31. TCI's status as TRG's managing partner means, in the words of Chris Heaphy, TCI's Assistant Secretary, that TCI "controls TRG." Pls.' Ex. 8, at 41. Steven Eder, TCI's Treasurer, agrees with this assessment. *See*

Pls.' Ex. 7, at 27. As to the second factor, TRG has no officers or directors – but it does have a number of "authorized signatories" who can act on TRG's behalf. Pls.' Ex. 8, at 169. These signatories are, without exception, officers or directors of TCI. *See id.* at 121, 170-71.

Plaintiffs have also presented evidence that TCI and TRG share a "common marketing image" and logo. In particular, Eder testified at his deposition that TRG does not have a logo or website separate from TCI's logo and website. Pls.' Ex. 7, at 92-93, 98-99. Moreover, TRG and TCI share the same place of business. *Id.* at 93. More generally, Heaphy testified that TCI and TRG "have a unified corporate image." Pls.' Ex. 8, at 121. Thus, it is fair to conclude that the public would have a great deal of trouble distinguishing between the two entities.

There is, by contrast, no evidence in the record concerning (1) the common use of employees and supervisors, (2) the integration of sales, or (3) the subsidiary's performance of marketing or other functions for the parent. The reason for these absences is, however, illuminating: TRG is a holding company that engages in no sales and lacks officers, directors, and employees; so far as the record reveals, it can act *only* via its authorized signatories, all of which are, as noted above, officers and directors of TCI.

Finally, when the signatories do act for TRG, they are bound by TCI's code of corporate conduct, and TRG's accounting is supervised by TCI's Audit Committee.

8

There is, in other words, some degree of direct control by TCI even when individuals are nominally acting in their capacity as signatories for TRG.

Collectively, this evidence suffices to conclude that TRG is an alter ego of TCI. No one independent of TCI can act for TRG, actions taken for TRG are cabined in some ways by TCI policies, the unrebutted evidence in the record is that TCI in fact controls TRG, and the public has little ground for distinguishing between the two entities. Accordingly, because this court has personal jurisdiction over TCI, it also possesses jurisdiction over TRG as TCI's alter ego.

**B.**

TRG Pier's relationship with TCI is very similar. As a wholly-owned subsidiary of TRG Pier is a second-level subsidiary of TCI. Pls.' Ex. 7, at 42. TRG Pier was created "specifically for the purpose of" owning part of the Pier, *id.*, and its creation was intended to benefit TCI, as "a portion of the income" from the Pier "would have accrued to [TRG]," *id.* at 47; *see also id.* at 61-62 (noting that TRG Pier's initial investment in Atlantic Pier came from TRG). Further, at his deposition, Eder testified that TCI's Board of Directors has the unchecked ability to control TRG Pier. *Id.* at 52. The individuals who can act for TRG Pier are also uniformly officers and directors of TCI, Pls.' Ex. 8, at 120-21, 164; *see also* Pls.' Ex. 7, at 29-30 (stating that Steven Eder is an authorized agent of TRG Pier), though there is some evidence in the record that TRG Pier may act in other, albeit unspecified, ways, *see* Pls.' Ex. 8, at 165-66. In fact, only Robert Taubman, TCI's

9

Chief Executive Officer ("CEO"), and William Taubman, TCI's Chief Operating Officer ("COO"), have ever been able to vote TRG Pier's interests in Atlantic Pier. *Id.* at 80-81.

Like TRG, TRG Pier also shares a corporate address with TCI and lacks its own independent logo. Pls.' Ex. 7, at 93-94. In fact, TCI and TRG Pier are so closely tied in terms of public image that the press release announcing TRG Pier's investment in the Pier did not, in fact, mention TRG Pier at all, but only TCI. The evidence as to whether TRG Pier shares a website with TCI and TRG is, however, ambiguous: Eder testified that he did not "think that [TRG] would be mentioned." *Id.* at 98.

Again like TRG, TRG Pier has no employees of its own, and engages in no sales.

TCI's code of corporate conduct also binds individuals acting for TRG Pier to the same extent as individuals acting on behalf of TRG. *Id.* at 139. Further, although TRG Pier nominally owns part of Atlantic Pier, TCI, not TRG Pier, examined various leases involving entities at the Pier. *See* Pls.' Ex. 7, at 74-75.

In short, as with TRG, the public has little reason to distinguish between TRG Pier and TCI – or, indeed, to know that TRG Pier exists as a separate entity. And even if TRG Pier may, as a theoretical matter, have avenues of action that do not run through TCI's officers and directors, TCI's CEO and COO are the only individuals authorized to vote TRG Pier's interests in Atlantic Pier, and the existence of those interests is TRG Pier's *raison d'être*. The record therefore contains adequate evidence from which to conclude

that TRG Pier is controlled by, and is an alter ego of, TCI.[3]

For these reasons, defendants' motion to dismiss for lack of personal jurisdiction will be denied.[4] An appropriate order accompanies this opinion.

---

[3] Having concluded that this court has jurisdiction over all three defendants for the reasons enumerated above, I do not consider plaintiffs' numerous other theories of personal jurisdiction.

[4] Defendants argue that exercising jurisdiction over TCI, TRG, and TRG Pier would be inconsistent "with fair play and substantial justice." *O'Connor*, 496 F.3d at 317 (internal quotation marks omitted). But it is only in a "rare and compelling case[]" that notions of fair play standing alone will present a basis for declining to exercise jurisdiction, *id.* at 325, and defendants have not met their burden of showing that this is such a case.