IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ATLANTIC PIER ASSOCIATES, LLC, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| BOARDAKAN RESTAURANT PARTNERS, LP, et al. | : | NO. 08-4564 |

---

| | | |
|---|---|---|
| BUDDAKAN RESTAURANT AT THE PIER IN | : | CIVIL ACTION |
| ATLANTIC CITY, NEW JERSEY, et al. | : | |
| | : | |
| v. | : | |
| | : | |
| ATLANTIC PIER ASSOCIATES, LLC, et al. | : | NO. 09-1619 |

**MEMORANDUM AND ORDER**

M. FAITH ANGELL                                                    August 30, 2010
UNITED STATES MAGISTRATE JUDGE

On September 29, 2009, this matter was reassigned from the Honorable Educardo C.

Robreno to the Honorable Louis H. Pollak. *See* Docket Entry No. 65. On September 30, 2009,

Judge Pollak ordered that the case be assigned to me, pursuant to 28 U.S.C. §636(b)(1)(A), Federal

Rule of Civil Procedure 72(a) and Local Rule of Civil Procedure 72.1(e), for pretrial management

purposes. *See* Docket Entry No. 66.

Presently before me is Plaintiffs' Motion for Leave to File an Amended Complaint to Add

The Taubman Company, LLC as an Additional Party Pursuant to Federal Rules of Civil Procedure

15(a)(2) and 15(c), inclusive of all exhibits thereto; Defendants' memorandum in opposition, and

exhibits, as well as Plaintiffs' reply brief. A Hearing was held on May 24, 2010.

**I. FACTUAL BACKGROUND**

The factual background was presented by the Honorable Eduardo C. Robreno in his

memorandum dated August 20, 2009, as follows:

I. BACKGROUND

This case is the consolidation of a landlord/tenant dispute and
tort action. On September 18, 2008, APA initiated an action against
Starr Plaintiffs, seeking the recovery of past-due rent. On April 16,
2009, Starr Plaintiffs initiated an action against APA, TRG Pier ,
TRG, TCI, GGH, Pier Developers, Peter J. Fine, Sheldon Gordon,
and Scott Gordon, alleging fraud, negligent misrepresentation, civil
conspiracy, and promissory estoppel. On April 20, 2009, the Court
consolidated these cases (doc. no. 15). Both actions relate to
agreements to lease and operate restaurants at the "Pier at Caesar's"
(the "Pier') in Atlantic City, New Jersey.

A. Defendants

For the purposes of organization and clarity, a brief discussion
of Defendants and their relative relationships is helpful. On May 1,
2003, Defendant Pier Developers, Inc. ("Pier Developers") entered
into a Ground Lease with the entity that owns Caesar's Palace Casino,
and thus, became the initial landlord of "the Pier," an area used to
develop a high-end mall on a pier over the beach in Atlantic City.

On January 31, 2005, pursuant to an Operating Agreement,
Defendants Pier Developers and TRG The Pier, LLC ("TRG The
Pier"), a real estate investment limited liability company, formed a
Delaware limited liability company known as Atlantic Pier
Associates, LLC ("APA"). Defendant Pier Developers then
transferred its interest in the Pier to Defendant APA, making APA the
landlord of the Pier.

Pursuant to the APA Operating Agreement, Defendant TRG
The Pier owned thirty percent of APA and was a minority member;
Defendant Pier Developers owned seventy percent of APA and was
a managing member. In April 2007, the management structure of
APA changed when TRG The Pier obtained an additional fifty
percent in APA, increasing its equity interest in the Pier to seventy
percent, and making TRG The Pier the managing member of APA,
and Pier Developers the minority member. (Aff. Chris B. Heaphy,
TRG The Pier, at ¶8).

Pier Developers and TRG The Pier are both owned and controlled by separate entities, also named as Defendants in this case. First, Pier Developers is a subsidiary of Defendant Gordon Group Holdings, LLC ("GGH") a developer in the retail and entertainment industries owned by Defendant Sheldon Gordon. Defendant Scott Sheldon and Peter Fine are employees of GGH. Second, TRG The Pier is a wholly owned subsidiary of Defendant The Taubman Realty Group, LP, ("TRG") a Delaware limited partnership. Defendant Taubman Centers, Inc. ("TCI"), a public Real Estate Investment Trust, owns a sixty-five percent managing general partnership interest in TRG and conducts all its operations.

A representation of the relationships among Defendant is illustrated as follows.

Atlantic Pier
Associates, LLC
[APA]

Membership interest held by:

| Managing Member: | Minority Member: |
|---|---|
| TRG The Pier | Pier Developers, Inc. |
| TRG, with business conducted by general partner TCI | Sheldon Gordon, GGH, and related entities |

For the purposes of discussion, the Court has grouped the Defendants in three categories: (1) Landlord Defendant, consisting of Defendant APA; (2) APA Minority Member Defendants, consisting of Defendants Pier Developers, GGH, Peter J. Fine, Sheldon Gordon, and Scott Gordon; and (3) APA Managing Member Defendants, consisting of Defendants TRG The Pier, TRG, and TCI.

B. Lease Agreements

On May 1, 2003, Pier Developers, as the initial landlord at the Pier, sought to attract tenants for the Pier. On March 13, 2004, Pier Developers entered into substantially identical leases with two Steven Starr restaurants, Buddakan and Continental ("the Leases"). The Leases contained several important clauses implicated in this case: (1)

integration clause; (2) delay in delivery clause; and (3) counterclaim clause (noting that Tenant's covenant to pay rent is an independent covenant). Importantly, the Lease contained no provisions with respect to other tenants which would occupy the Pier (absence of "Co-tenancy Clause"). The premises leased for the Starr restaurants were delivered pursuant to the Leases, by correspondence dated November 1, 2005.

Pier Developers entered into two similar leases with entities that would do business as "RumJungle" and "English is Italian" (both restaurants were the creation of restauranteur Jeffrey Chodorow). These leases contained clauses which required Pier Developers to construct a substantial part of the space that "RumJungle" and "English is Italian" would occupy. Starr Pls.' Compl. Exs. C & H, at ¶3.1. In addition, these leases provided for automatic termination in the event that costs exceeded an agreed upon amount. The premises leased for "RumJungle" and "English is Italian" were delivered pursuant to the agreements, by correspondence dated October 31, 2005.

On November 11, 2005, a representative from the Chodorow entities sent identical letters to APA on behalf of "RumJungle" and "English is Italian," indicating that the tenant costs for both restaurants exceeded the amount specified in the agreements, and thus, the restaurants had a right to terminate the lease under ¶3.3(9). Although the termination dates for both agreements had passed, the letter indicated that the Chodorow entities "shall deem the lease[s] terminated and of no further effect."

C. Lease Amendments

On November 9, 2005, Starr wrote to APA expressing "uncertainty" with respect to the May 15, 2006 grand opening for the Pier. Starr requested a "detailed schedule showing the percentage of the [Pier] under binding leases and the parties thereto." In response, on December 16, 2005, Peter Fine of GGH responded by letter, attaching a list of tenants "with executed leases and leases in negotiation with the Pier at Caesars in Atlantic City." Included in this list were "RumJungle" and "English is Italian." In January 2006, Starr became further concerned with a perceived lack of progress with respect to other tenants in the Pier. According to Starr, during a meeting with APA, APA again represented that "RumJungle" and "English is Italian" were "definitely opening."

4

According to Starr, based on these representations, Starr entered into Amended Leases with APA, supplying a new Commencement Date. Pursuant to the Amended Leases, the Commencement Date was defined as follows: "The earlier of (i) the later ("Later Date") of (a) the date Sonsie and Phillips Seafood and at least seventy five percent (75%) of the rentable floor area of the Center to be occupied by other retail tenants open for business and (b) September 1, 2006, which Later Date is hereinafter called the 'Required Completion Date.' or (ii) the day on which Tenant opens for business." Starr Pls. ' Compl. Exs. P & Q, at ¶1. The Amended Leases also contained a "Co-tenancy Clause" which addressed the parties' rights with respect to other businesses which may open at the Pier." In addition, the Amended Leases provided Starr with an option to terminate the Amended Leases if certain conditions were not satisfied.

### D. Procedural History

On June 25, 2008, Starr Plaintiffs filed a Praecipe to Issue Writ of Summons and Notices for the Pre-Complaint Production of Documents and Discovery, pursuant to Pennsylvania Rules of Civil Procedure 1007 & 4007.1(c)-(d), in the Philadelphia County Court of Common Pleas, naming the same Defendants as named in the instant case. During pre-complaint discovery for the state court action, Starr ceased paying rent owed to APA under the Amended Leases. This state action has since been withdrawn.

On September 18, 2008, APA filed this action, predicated upon diversity of citizenship, against Starr Plaintiffs to enforce the covenants to pay rent. On April 16, 2009, Starr Plaintiffs filed a tort action against Landlord Defendant, APA Managing Member Defendants, and APA Minority Member Defendants, alleging fraud, negligent misrepresentation, civil conspiracy, and promissory estoppel. As previously noted, on April 20, 2009, the Court consolidated these cases (doc. no. 15).

*Atlantic Pier Associates, LLC, et al. v. Boardakan Restaurant Partners, LP, et al.,* CA No. 08-4564,

Memorandum at 3-12 (EDPA, August 20, 2009) (footnotes omitted).

## II. MOTION TO AMEND COMPLAINT

In their motion to amend their complaint, Plaintiffs seek to join Taubman Company, LLC

(Taubco), a management entity involved in managing the Pier operations on behalf of the Taubman Defendants, as a defendant in this action. *See* Plaintiffs' Motion for Leave to File an Amended Complaint to Add the Taubman Company, LLC as an Additional Party Pursuant to Federal Rules of Civil Procedure 15(a)(2) and 15(c) at 7[1] Plaintiffs assert that their proposed amendment adding Taubco as a party is based upon newly discovered evidence. Plaintiffs state that they learned of Taubco during their state court proceedings. "However, based upon the Operating Agreement produced during pre-complaint discovery, and the pre-complaint testimony of the Gordon Defendants, it appeared that the Management Agreement for Taubco to formally participate in Pier operations did not begin until the Pier held its Grand Opening, which was in July 2006, . . .." Plaintiffs' Brief in support of their Motion for Leave to File an Amended Complaint to Add The Taubman Company, LLC as an Additional Party Pursuant to Federal Rules of Civil Procedure 15 (a)(2) and 15(c)[2] at 7. During jurisdictional discovery in the present matter, Plaintiffs became aware of a February 1, 2005, Lease Administration Services Agreement ("LASA") which provided that "beginning on February 1, 2005, and prior to the opening of the Pier, Taubco (and its alter-egos) would be solely responsible for lease analysis and lease administration, sending pre-delivery and delivery notices, default notices, and other issues". *Id.* at 9. This LASA was produced to Plaintiffs on February 22, 2010. *Id.* Because of this production, Plaintiffs now seek leave to join Taubco as a Defendant in this case. Defendants TRG The Pier, LLC; The Taubman Realty Group Limited Partnership; and Taubman Centers, Inc.[3] argue that the proposed amended complaint is futile

---

[1]Hereinafter "Plaintiffs'Motion".

[2]Hereinafter "Plaintiffs' Brief".

[3]Hereinafter "The Taubman Defendants".

because it does not state a viable claim against Taubco and the fraud, negligent misrepresentation, and conspiracy claims against Taubco are time-barred. The Taubman Defendants further assert that the Starr Plaintiffs made a strategic decision not to sue Taubco earlier, and they have no legitimate excuse for their undue delay in now seeking to name it as a defendant. *See* Memorandum of Defendants TRG The Pier, LLC, The Taubman Realty Group Limited Partnership, and Taubman Centers, Inc., in Opposition to Plaintiffs' Motion for Leave to File an Amended Complaint to Add The Taubman Company, LLC as an Additional Party Pursuant to Federal Rules of Civil Procedure 15(a)(2) and 15(c) at i-ii.[4]

## III. DISCUSSION

### A. Legal Standards

Federal Rule of Civil Procedure 15(a)(2) permits a party to amend its pleading only with the opposing party's written consent or the court's leave, and "[t]he court should freely give leave when justice so requires". F.R.C.P. 15(a)(2). The issue of the relation back of amendments is discussed in F.R.C.P. 15(c)(1):

> (1) When an Amendment Relates Back. An amendment to a pleading relates back to the date of the original pleading when:
>> (A) the law that provides the applicable statute of limitations allows relation back;
>> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out-or attempted to be set out-in the original pleading; or
>> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>>> (i) received such notice of the action that it will not be

---

[4]Hereinafter "Defendants' Memorandum".

prejudiced in defending on the merits; and
(ii) knew or should have known that the action would
have been brought against it, but for a mistake
concerning the proper party's identity.

The Supreme Court has articulated five considerations in determining whether or not to grant

a party leave to amend a complaint:

In the absence of any apparent or declared reason-such as undue
delay, bad faith or dilatory motive on the part of the movant, repeated
failure to cure deficiencies by amendments previously allowed, undue
prejudice to the opposing party by virtue of allowance of the
amendment, futility of amendment, etc.-the leave sought should, as
the rules require, be freely given.

*Foman, v. Davis*, 371 U.S. 178, 182 (1962); *see also Young v. St. Luke's Hospital*, 2010 WL

1348468 (EDPA, March 30, 2010).

**B. Analysis**

1. Prejudice

"It is well-settled that prejudice to the non-moving party is the touchstone for the denial of

an amendment". *Johnson v. Trueblood*, 629 F.2d 287, 297 (3d Cir. 1980). However, simply

claiming prejudice is insufficient. "Prejudice focuses on the hardship to the defendant that would

result if the amendment were permitted." *Young*, 2010 WL 1348468 *3 (EDPA, March 30, 2010).

"To determine whether prejudice exists, the court should consider whether allowing an amendment

would result in additional discovery, cost, and preparation to defend against *new* facts or new

theories" (emphasis in original) (internal quotations omitted). *Id.* As stated by the Honorable

Herbert J. Hutton:

Courts have found undue prejudice to the non-moving party
and denied leave to amend where the amendment would have asserted
new claims, where new discovery would have been necessary, where

8

the motion for leave was filed months after the factual basis of the amendment was discovered by the moving party, and where the motion for leave was brought after summary judgment motions were filed.

*Cummings v. City of Philadelphia*, 2004 WL 906259 *4 (EDPA, April 26, 2004); *see also Richter v. Pfundt*, 2009 WL 5064381 *2 (EDPA, December 24, 2009).

The matter herein is in the initial stages of discovery, with only jurisdictional discovery and related substantive discovery having been completed. *See* N.T. 5/24/10 at 69. A trial date has not been set. No new claims or causes of action are asserted in the proposed amended complaint. *See* Plaintiffs' Brief at 10. Plaintiffs seek to join Taubco and assert liability for the same conduct, transactions and occurrences for which they asserted liability for the other Taubman Defendants in the initial Complaint. This change of adding Taubco as a defendant, does not present new facts or legal theories which would prejudice the defendants by requiring them to engage in additional discovery and preparation to defend against them. None of the defendants will be deprived of the chance to present facts or evidence.

Furthermore, the motion to amend was filed April 9, 2010, only two months after the factual basis for the amendment was discovered by Plaintiffs,[5] and no motion for summary judgment has

---

[5]Andrew J. DeFalco, Esq. argued as follows:

> MR. DEFALCO: In February of 2010, the Taubman defendants attached to one of their jurisdictional briefs a February 1st, 2005 lease administration services agreement between Atlantic Pier and the Taubman Company LLC.
> We had never seen this document before. It was executed a day after the operating agreement that had been produced during discovery which provided that the Taubman Company LLC did not have any contractual obligation until June of 2006.
> In the lease administration services agreement, it provided that the Taubman Company LLC took over contractually lease administration for The Pier from February 1st, 2005 going forward.
> So, naturally we were very surprised when we received this document, we said we never seen this before, and it dramatically changes the landscape as far as

been filed. Granting Plaintiffs leave to file an Amended Complaint would not cause defendants undue prejudice.

### 2. Relation Back

Plaintiffs allege that their proposed claims against Taubco relate back to their initial filing pursuant to F.R.C.P. 15(c), allowing for relation back of this proposed amendment to add a new party. Three conditions must be met. First, the claims against Taubco must arise out of the conduct, transaction, or occurrence set forth in the original pleading. Clearly, the amendment asserts a claim that arose out of the conduct, transaction, or occurrence set out in the original pleading, be it the Writ of Summons filed in state court or the Complaint filed in the instant action. Second, within 120 days of the filing of the original complaint, Taubco must have received such notice of the action that it will not be prejudiced in maintaining a defense on the merits. "The Circuit has interpreted the second requirement as containing two prongs, notice and the absence of prejudice, each of which must be satisfied." *Smith v. City of Philadelphia*, 363 F.Supp.2d 795, 798-799 (EDPA, 2005). The absence of prejudice herein has already been addressed. Though there is disagreement among the parties as to which "original pleading" is the appropriate one for which this amendment to relate back, it is evident that Taubco had notice of these proceedings within the appropriate time frame, whether of the Writ of Summons or of the Complaint filed in this action. In the state court proceedings, TCI's attorney produced documents from Taubco, revealing some communication or relationship between the attorney for the Taubman Defendants and Taubco. *See* Plaintiffs' Brief,

---

what the parties obligations were during the time that the fraud was being was being committed.

N.T. 5/24/10 at 11-12.

10

Exhibit F. Additionally, officers of Taubco are also officers and/or directors of TCI. There appears

to be "sufficient nexus of interest" between Taubco and TCI, such that Taubco had proper notice of

the filing of these legal proceedings. *Id.* at 801.

Finally, within 120 days of the filing of the original complaint, Taubco should have known

that the action would have been brought against it, but for a mistake concerning the proper party's

identity. "While the text of Rule 15(c) suggests that the mistake element only applies to misnamed

or mis-described parties, the Rule is widely-understood to allow the addition of new parties that were

never originally named or described." *Fields v. Blakc*, 349 F.Supp.2d 910, 918 (EDPA, 2004)

(internal quotations omitted). "The mistake requirement is intended to insure that the new defendant

knew or should have known that failure to join was not simply a legal strategy, but that misjoinder

was a distinct possibility." *Id.* "For this reason, courts have typically resisted a narrow reading of

the mistake element and allowed the addition of responsible individual defendants when plaintiff

simply made an error in legal judgment or form . . . .". *Id.*

The Taubman Defendants turn to Plaintiffs' Rule 12(b)(2) Memorandum and assert that

Plaintiffs deliberately decided against suing Taubo when they began these proceedings.

> Although the Plaintiffs have not joined [Taubco] as an additional
> defendant, the Plaintiffs could easily do so . . . . However, [Taubco]
> is nothing more than a conduit for the Taubman Defendants, which
> will be liquidated upon a judgment. [Taubco] does not have, nor will
> it ever have the financial responsibility or wherewithal to provide
> relief to the [Starr] Plaintiff[s].

Defendants' Memorandum at 28, (quoting Starr Plaintiffs' Rule 12(b)(2) Memo. at 29). However,

the document which prompted Plaintiffs to file the instant motion was not produced until February,

2010, and Plaintiffs filed the present motion within a reasonable time of its production. But for the

omission of this document, Plaintiffs may have joined Taubco. Plaintiffs' proposed amended

complaint satisfies the requirements for relation back under F.R.C.P. 15(c).

### III. CONCLUSION

For the foregoing reasons, Plaintiffs' motion to amend their complaint will be granted. An

appropriate Order will follow.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA
Robert N. C. Nix, Sr. Federal Building, S/211
900 Market Street
PHILADELPHIA, PENNSYLVANIA 19107


Chambers of
M. FAITH ANGELL                                                    P: (215) 597-6079
United States Magistrate Judge                                     F: (215) 580-2165

## *FAX / MAIL COVER SHEET*

**CASE NO:    08-4564**                    **DISTRICT COURT JUDGE: LHP**

**TODAY'S DATE**:    August 30, 2010        **LAW CLERK'S INITIALS**:LFS

**VIA FAX;**

| **NAME:** | **FAX NUMBER:** |
|---|---|
| 1.   Jeffrey Meyers, Esq.<br>William B. Igoe, Esq. | (215) 864-9757 |
| 2.   Andrew J. DeFalco, Esq.<br>Paul R. Rosen, Esq. | (215) 241-8844 |
| 3.   Stanley B. Cheiken, Esq. | (215) 572-7838 |
| 4.   Timothy B. Fitzgerald, Esq. | (203) 618-9600 |
| 5.   Arthur O'Reilly, Esq. | (313) 465-8000 |
| 6.   Brian P. Flaherty, Esq.<br>Chad Evin Kurtz, Esq. | (215) 665-2013 |
| 7.   Bruce L. Segal, Esq.<br>Joseph Aviv, Esq. | (248) 566-8483 |