## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ATLANTIC PIER ASSOCIATES, LLC,

                    Plaintiffs,

    v.

BOARDAKAN RESTAURANT
PARTNERS, L.P., et al.,

                    Defendants;

CIVIL ACTION

No. 08-4564

BUDDAKAN RESTAURANT AT THE
PIER IN ATLANTIC CITY, NEW
JERSEY, et al.,

                    Plaintiffs,

    v.

ATLANTIC PIER ASSOCIATES, LLC,
et al.,

                    Defendants.

[No. 09-1619.  *See* note 1, *infra*.]

Pollak, J.                                                        July 27, 2011

## OPINION

The plaintiffs in this landlord-tenant dispute are the operators of two restaurants at "The Pier at Caesar's" in Atlantic City, and the defendants are various entities with ownership interests in The Pier. The restaurants contend that they were fraudulently induced to enter into a set of leases with the owners. Specifically, they allege that the owners made false statements implying that other high-profile restaurants would also become tenants at The Pier. The restaurants assert that they would not have entered into the leases if they had known that the other high-profile restaurants would not be joining them at The Pier.

Pending before the court is a motion to dismiss filed by one set of owners. The owners have presented several grounds for dismissal, including that the restaurants' suit is barred by the statute of limitations. As discussed below, the claims against these owners are indeed time-barred.

## I. Factual Background[1]

---

[1] This case includes two diversity actions. The first, *Atlantic Pier Associates, LLC v. Boardakan Restaurant Partners, L.P., et al.* ("the Rent Action"), was filed, under docket number 08-4564, by the landlord against the restaurants, and it alleges that the restaurants have breached the covenant to pay rent. The second, *Buddakan Restaurant at The Pier in Atlantic City, N.J., et al. v. Atlantic Pier Associates, LLC, et al.,* ("the Fraud Action") was filed, under docket number 09-1619, by the restaurants against the landlord and other entities. As discussed below in the text, the cases were consolidated under docket number 08-4564. The pending motion to dismiss was filed by one set of defendants in the Fraud Action. For a more comprehensive description of the background of this litigation, the

The plaintiffs in this diversity action are Boardakan Restaurant, LLC and Oceanental, LLC.  These corporations operate two restaurants—Buddakan and Continental, respectively—owned by Stephen Starr, who is also a named plaintiff.  The defendants can be split into three groups: (1) Atlantic Pier Associates, LLC, (2) the Gordon Defendants, and (3) the Taubman Defendants.  Atlantic Pier Associates ("APA") is the landlord of The Pier.  APA is a Delaware limited liability corporation that is owned by two sets of entities, referred to throughout this litigation as the Gordon Defendants and the Taubman Defendants.  The Taubman Defendants consist of: TRG the Pier, LLC; Taubman Realty Group, L.P. ("TRG"); Taubman Centers, Inc. ("TCI"); and Taubman Company, LLC ("TaubCo").[2]  The Gordon Defendants consist of: Pier Developers, Inc.; Gordon Group Holdings, LLC ("GGH"); and two individuals, Scott Sheldon and Peter Fine.[3]  The initial complaint filed in this court named all of these defendants save for TaubCo, which was added after Magistrate Judge M. Faith Angell granted plaintiffs leave to amend their complaint.  Dkt. 101.

The amended complaint alleges that the defendants engaged in a pattern of fraud

---

reader is referred to Judge Robreno's memorandum of August 20, 2009.  Dkt. 54.

[2] TRG the Pier is the Managing Member of APA and is a wholly owned subsidiary of TRG.  TCI is a Real Estate Investment Trust that owns a sixty-five percent managing general partnership interest in TRG and conducts all of its operations.  TaubCo is a "management entity involved in managing the Pier operations on behalf of the other Taubman Defendants."  Pls.' Mot. for Leave to File an Amend. Compl. at 7 (Dkt. 90).

[3] Pier Developers, Inc. is a subsidiary of GGH, and Sheldon and Fine are employees of GGH.

and negligent misrepresentation over the course of various lease negotiations.  In 2004, the defendants and plaintiffs entered into a lease allowing plaintiffs to build and operate two Stephen Starr restaurants, Buddakan and Continental, at The Pier.  Am. Compl. ¶¶ 46–47 (Dkt. 103).[4]  The defendants also entered into a set of leases with entities operated by the restauranteur Jeffrey Chodorow, under which Chodorow agreed to open a night club (RumJungle) and a restaurant (English is Italian) at The Pier.  Am. Compl. ¶¶ 51–57; 67–72.

In November 2005, plaintiffs sent a notice to the defendants stating that, under the terms of the lease, plaintiffs could withdraw from the agreement because the premises had not been constructed and improved in accordance with the schedule mandated by the lease.  Am. Compl. ¶ 85.  The plaintiffs expressed a willingness to follow through with the agreement, but they sought assurances that other high-profile establishments, including RumJungle and English is Italian, would also follow through on their leases.  Unbeknownst to plaintiffs, however, a Chodorow representative had sent letters to the defendants indicating that, in light of the delays, he considered the leases for RumJungle and English is Italian to be null and void, unless the parties could agree on certain amendments to the lease.  Am. Compl. ¶¶ 87–88.  No such amendments were entered into for the Chodorow restaurants.

---

[4] The recital of facts is drawn from the Amended Complaint, whose allegations must, at this stage of the litigation, be taken as true.  All citations to the docket are to case number 08-4564, unless otherwise noted.

In response to the plaintiffs' request for assurances, the plaintiffs allege that—despite having knowledge that the Chodorow leases had been effectively terminated—the defendants provided plaintiffs with a lease schedule that falsely stated that those establishments had binding leases to open at The Pier in the summer of 2006. Am. Compl. ¶¶ 93–97. In reliance on these and related representations,[5] plaintiffs then entered into an amended lease, in February 2006, which precluded the plaintiffs from walking away from the project. Am. Compl. ¶¶ 14–16.

Eventually, Buddakan and Continental opened for business at The Pier, but RumJungle and English is Italian did not. Plaintiffs allege that The Pier is now a "complete failure" and is "virtually 'dark.'" Am. Compl. ¶ 12. They further allege that they have incurred in excess of $20 million in damages, and that "the valuable brand names and marks of Buddakan and Continental are now irreparably damaged and diminished due to their association with this failed project . . . ." Am. Compl. ¶ 136.

Plaintiffs filed this diversity action on April 17, 2009. In their four-count complaint, plaintiffs allege that the defendants are liable for fraud, negligent misrepresentation, and civil conspiracy. They further allege that defendants are liable under the theory of promissory estoppel. Plaintiffs request over $20 million in

---

[5] For example, plaintiffs allege that, in a subsequent meeting at The Pier, Fine told one of Starr's representatives, David Robkin, that RumJungle and English is Italian "were definitely opening." Am. Compl. ¶¶ 102–05. Fine later sent an email to Robkin that, according to plaintiffs, falsely indicated that the Chodorow restaurants would be opening at The Pier. Am. Compl. ¶¶ 107–13.

compensatory damages, rescission of the February 2006 lease amendments, and punitive damages.

The pending motion to dismiss has been filed by the Taubman Defendants only.

## II. Procedural Background

A. State and federal litigation

On January 9, 2007, over two years before initiating the current federal action, the plaintiffs filed a complaint against their landlord, APA, in New Jersey state court, seeking a declaration that they were not bound by the amended leases.  N.J. Compl. (Dkt. 91-1). That same day, the plaintiffs sent a second draft complaint to the Gordon Defendants which included claims of fraud in the inducement, fraud, negligent misrepresentation, and breach of the implied covenant of good faith and fair dealing.  Am. N.J. Compl. (Dkt. 91-2).  Although the New Jersey court granted leave to amend the initial complaint to include the fraud claims and to join additional parties, the plaintiffs and the defendants entered into a Stipulation of Dismissal Without Prejudice.  *See* Dkt. 91-4.

On June 25, 2008, plaintiffs filed a Writ of Summons in the Court of Common Pleas of Philadelphia County.  Dkt. 112-5.  Plaintiffs then filed, in the same action, a notice of pre-complaint discovery.  Dkt. 91-5.[6]  This state court action named APA, GGH,

---

[6] Under Pa. R. Civ. P. 4003.8(a), "[a] plaintiff may obtain pre-complaint discovery where the information sought is material and necessary to the filing of the complaint and the discovery will not cause unreasonable annoyance, embarrassment, oppression, burden or expense to any person or party."

and TCI as defendants.  (Aside from TCI, none of the other Taubman Defendants were named).  The notice of pre-complaint discovery alleged various fraud claims that are analogous to those alleged in this federal action.

On July 23, 2008, the defendants in the Pennsylvania state court action sought removal to federal court on grounds of diversity of citizenship.  Dkt. 1, no. 08-3448. Plaintiffs opposed removal and filed a motion to remand.  Dkt. 2, no. 08-3448.  In the meantime, plaintiffs ceased paying rent.  Accordingly, and while the remand motion was pending, APA filed a federal complaint ("the Rent Action") against the plaintiffs, on September 18, 2008, to enforce the covenants to pay rent.  *See* Dkt. 1, no. 08-4564.

On September 24, 2008, Judge Robreno granted the plaintiffs' motion to remand because the plaintiffs had not yet filed a complaint in state court.  Dkt. 15, no. 08-3448.[7] The case thus returned to the Philadelphia County Court of Common Pleas, where plaintiffs proceeded to conduct pre-complaint discovery.

Plaintiffs then filed a motion to stay or dismiss the Rent Action pending resolution of the state court action.  Dkt. 4, 08-4564.  On January 16, 2009, Judge Robreno granted that motion and imposed a 90-day stay of the Rent Action.  Dkt. 12.[8]  The stay expired on

---

[7] Judge Robreno's remand ruling relied on *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 233 (3d Cir. 2005), in which the Third Circuit held that "a writ of summons alone can no longer be the 'intial pleading' that triggers the 30-day period for removal under . . . 28 U.S.C. § 1466(b)."

[8] Although plaintiffs had asked the court to abstain under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), Judge Robreno ruled that "the Court is not in a position to apply *Colo. River* and to determine whether abstention is

April 16, 2009, at which time Judge Robreno held a status conference.  By this time, plaintiffs' counsel had decided not to file a complaint in state court, and instead had decided to re-file the Fraud Action in federal court.  This development was allegedly motivated by plaintiffs' decision not to name certain non-diverse defendants—such as Jeffrey Chodorow, the owner of RumJungle and English is Italian—in the Fraud Action. Plaintiffs also allege that they were motivated by a desire to avoid the time and expense of another removal.

At the status conference, plaintiffs' counsel stated his intention to withdraw the state action and to re-file in federal court; counsel also expressed his view that the Fraud Action should be consolidated with the Rent Action.  Tr. of Hr'g at 3–5, Apr. 16, 2009 (Dkt. 35).  Defense counsel agreed that "it would be appropriate" to consolidate the two cases.  The next day, April 17, 2009, plaintiffs filed the Fraud Action in federal court. This federal Fraud Action was docketed under case number 09-1619.  That same day, Judge Robreno ordered that the Fraud and Rent Actions be consolidated under case number 08-4564—the docket number for the Rent Action—and accordingly closed case number 09-1619.  Dkt. 15.  Also on April 17, 2009, plaintiffs requested a discontinuance from the state court.  *See* Praecipe to Discontinue Action without Prejudice (Dkt. 91-7). The state court action was discontinued on April 20, 2009.  Dkt. 112-12 at 40.

---

appropriate in the federal court case."  Dkt. 12 at 2 n.1.  Nevertheless, Judge Robreno granted a "limited stay of the federal court case for 90 days to allow the state court case to run its initial course."  *Id.*

B. The first motion to dismiss

On June 16, 2009, the Taubman Defendants, Gordon Defendants, and APA each filed a motion to dismiss under Rule 12(b)(6).[9]  The Taubman Defendants asserted that (1) the court lacked personal jurisdiction; (2) plaintiffs' claims were barred by the parol evidence rule, the gist of the action doctrine, the economic loss doctrine, and the statute of limitations; and (3) the complaint failed to state a claim for fraud, conspiracy, and promissory estoppel.[10]

On August 21, 2009, Judge Robreno issued a decision on all three motions.  Dkt. 54.  As to the Taubman Defendants' motion to dismiss for lack of personal jurisdiction, Judge Robreno ruled that plaintiffs' allegations were sufficient to warrant jurisdictional discovery, and thus denied without prejudice the Taubman Defendants' motion to dismiss.   As to APA and the Gordon Defendants, Judge Robreno ruled that the parol evidence question—i.e., whether that rule barred consideration of the alleged representation that Rumjungle and English is Italian would "definitely open"—could not be resolved without discovery.  Specifically, because Judge Robreno could not rule that the parol evidence was barred, he also "[could] not conclude that Starr Plaintiffs ha[d]

_____

[9] At this stage, plaintiffs had not yet amended the complaint to join Taubco as a defendant, and thus the Taubman Defendants' motion was filed by TRG the Pier, TRG, and TCI.

[10] The Gordon Defendants' motion only asserted that the complaint failed to state a claim for fraud, conspiracy, and promissory estoppel.  APA's motion invoked only the parol evidence rule and the gist-of-the-action doctrine.

-9-

failed to state claims for fraud, negligent misrepresentation, civil conspiracy, and promissory estoppel." Dkt. 54 at 39. Accordingly, the Gordon Defendants' and APA's motions to dismiss were denied with prejudice.

Prior to commencement of jurisdictional discovery, Judge Robreno recused himself and the case was assigned to my docket on September 29, 2009. Dkt. 65. On August 2, 2010, I denied the Taubman Defendants' motion to dismiss for lack of personal jurisdiction. Dkt. 98.

C. The amended complaint and the renewed motion to dismiss

On April 9, 2010, the plaintiffs sought leave to file an amended complaint adding Taubco as a defendant. That motion was granted on August 30, 2010, dkt. 102, and on September 13, 2010, the plaintiffs filed an amended complaint. Dkt. 103.

On September 23, 2010, all Taubman Defendants, including Taubco, filed a renewed motion to dismiss. The Taubman Defendants assert that (1) the complaint is barred by the statute of limitations; (2) the claims are barred by the parol evidence rule; (3) the claims are barred by the gist-of-the-action and/or economic loss doctrines; and (4) even if the foregoing defenses are rejected, the complaint fails to state a claim for relief. This opinion addresses only the Taubman Defendants' contention that plaintiffs' action is barred by the statute of limitations.

### III. Discussion

It is undisputed that the Pennsylvania statute of limitations and tolling principles

apply in this case, and that the limitations period for plaintiffs' claims is two years.[11]   The

critical questions are when the limitations period accrued and whether or not plaintiffs are

entitled to tolling.

**(1) The discovery rule**

"In Pennsylvania, a cause of action accrues when the plaintiff could have first

maintained the action to a successful conclusion." *Fine v. Checcio*, 870 A.2d 850, 857

(Pa. 2005).  However, under the discovery rule, "the statute of limitations is tolled until

the plaintiff learns or reasonably should have learned through the exercise of due

diligence of the existence of the claim." *Beauty Time, Inc. v. Vu Skin Sys., Inc.*, 118 F.3d

140, 148 (3d Cir. 1997).  "[R]easonable diligence is not an absolute standard, but what is

expected from a party who has been given reason to inform himself of the facts upon

which his right to recovery is premised." *Fine*, 870 A.2d at 858.  Thus, "[t]he discovery

rule arises out of an 'inability of the injured, despite the exercise of due diligence, to

know of the injury or its cause.'" *Gallucci v. Phillips & Jacobs*, 614 A.2d 284, 312 (Pa.

---

[11] In this diversity action, the court must apply the law of the forum state of Pennsylvania.
*See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 497 (1941).  To the extent that
there is a potential choice of law issue because the claim might have accrued in New
Jersey, the choice of law rules of Pennsylvania would result in the application of
Pennsylvania's two-year statute of limitations.  *See* 42 Pa. Cons. Stat. § 5521(b) ("The
period of limitation applicable to a claim accruing outside this Commonwealth shall be
either that provided or prescribed by the law of the place where the claim accrued or by
the law of this Commonwealth, whichever first bars the claim."); *compare* N.J. Stat. Ann.
§ 2A:14-1 (statute of limitations for fraud and negligent misrepresentation claims is six
years) *with* 42 Pa. Cons. Stat. § 5524(7) (statute of limitations for those claims is two
years).

Super. Ct. 1992) (quoting *Pocono Int'l Raceway v. Pocono Produce*, 468 A.2d 468, 471 (Pa. 1983)).  "The point of time at which the injured party should reasonably be aware that he or she has suffered an injury is generally an issue of fact to be determined by the jury.  Only where the facts are so clear that reasonable minds cannot differ may the commencement of the limitation period be determined as a matter of law."  *Sadtler v. Jackson-Cross Co.*, 587 A.2d 727, 732 (Pa. Super. Ct. 1991) (citation omitted).

Defendants argue that plaintiffs were aware of their injury on January 9, 2007, and thus that the April 16, 2009, federal complaint was filed beyond the two-year limitations period.  Plaintiffs concede that they were aware of the perceived fraud as early as January of 2007.[12]  But plaintiffs stress that they did not name the Taubman Defendants in the January 2007 New Jersey complaint; according to the plaintiffs, this shows that they were not aware of their injury and its cause, or at least raises a question of fact that must go to a jury.  This argument must be rejected, however, because "[s]tate and federal courts in Pennsylvania, applying Pennsylvania law, have expressly rejected application of the discovery rule where a plaintiff merely lacks knowledge as to the defendant's identity."  *Bradley v. Conner*, No. 07-1347, 2007 U.S. Dist. LEXIS 87722, at *12 (W.D. Pa. Nov. 29, 2007) (citing state and federal cases).  As stated by the Pennsylvania Superior Court,

---

[12] Indeed, this awareness is documented in the amended New Jersey complaint that plaintiffs sent to certain of the Gordon Defendants on January 9, 2007.  Dkt. 105-2.  Moreover, in their brief in support of the motion to add Taubco as a party, plaintiffs stated that "[in] January 2007, the Plaintiffs began to believe that they had been defrauded into entering into the [lease] Amendments."  Dkt. 90.

> the burden is on the injured party, once he discovers the cause of his injuries
> . . . to determine within the statutory period (unless there is fraud or
> concealment) the party or parties whose negligence or breach of duty was
> responsible for the event or the condition. We find in the case before us that
> an allegation of mere difficulty in identifying defendants was not sufficient to
> toll the running of the statute of limitations.

*Cathcart v. Keene Indust. Insulation*, 471 A.2d 493, 501 (Pa. Super. Ct. 1984).

Accordingly, the limitations period cannot be tolled simply because the plaintiffs were

not, in January 2007, aware of the Taubman Defendants' role in the injury.

Plaintiffs also seem to contend that, though they were aware of the injury (i.e., the

fraud) in January 2007, they were not aware of the "cause" of that injury.  Specifically,

plaintiffs argue that they did not know of the "pattern of conspiracy and fraudulent

inducement" committed by the Taubman Defendants, nor did they know of the "central"

facts underpinning the fraud—that RumJungle and English is Italian had terminated their

leases in 2005.  Pls.' Opp'n at 47 (Dkt. 112).  However, this claim is belied by plaintiffs'

own draft of the amended New Jersey complaint, in which plaintiffs describe in great

detail that the landlord had fraudulently induced plaintiffs to enter into a lease (and an

amended lease) by stating that RumJungle and English is Italian would also be tenants at

The Pier.  Am. N.J. Compl. (Dkt. 105-2).

It is true that plaintiffs did not, in the New Jersey complaint, allege that the

RumJungle and English is Italian leases had been terminated.  But plaintiffs clearly

understood the central fraud allegations they have presented in the instant case—i.e., that

the landlord fraudulently concealed the fact that the two Chodorow restaurants would not

-13-

be opening.  In essence, plaintiffs suggest that the statute of limitations should be tolled

until a plaintiff has learned each factual nuance of their claims.  But this argument has

been squarely rejected by the Pennsylvania Supreme Court.  *See, e.g.*, *Pocono Int'l*

*Raceway*, 468 F.2d at 471 ("[T]he discovery rule . . . is an exception, not one of general

application such that before the statute of limitations is deemed to commence, it must be

established that the plaintiff has acquired finite knowledge of all operative facts.").  A

panel of the Superior Court elaborated upon this concept in *Gallucci v. Phillips & Jacobs*,

observing that:

> The relevant inquiry is not whether a plaintiff has sufficient information to
> prepare a complaint, but whether plaintiff knew of the injury and the cause
> thereof. . . .  The fact that appellants lacked sufficient detail to draft a perfect
> complaint will not toll the statute. Appellants had the duty to apprise
> themselves of the necessary facts and pursue legal recourse within the statute
> of limitations.

*Gallucci*, 614 A.2d at 313–14.

The requirement that a plaintiff commence an action within the statute of

limitations does not, of course, force a plaintiff to stand on an incomplete complaint;

instead, such a plaintiff may seek leave to amend to add parties or claims.  In short, the

limitations period cannot be tolled in the present instance simply because the plaintiffs

lacked knowledge of the entire factual basis of their injury.

Accordingly, because "reasonable minds would not differ in finding that

[plaintiffs] knew or should have known on the exercise of reasonable diligence of [their]

injury and its cause," *Fine*, 870 A.2d at 858, the court finds, as a matter of law, that the

discovery rule does not apply.  Thus, the limitations period began to run, at the latest, on

January 9, 2007, and would, absent other grounds for tolling, have expired on January 9,

2009, roughly three months prior to the filing of this action.

**(2) Tolling based on the filing of the Pennsylvania state action**

The plaintiffs contend that, even if the limitations period is not tolled by the

discovery rule, they are entitled to tolling for the period during which their action was

pending in the Pennsylvania Court of Common Pleas.  As noted above, on June 25, 2008,

plaintiffs filed a writ of summons in the Pennsylvania state court.  That action was

removed to federal court, but then remanded by Judge Robreno because plaintiffs had yet

to file a complaint in state court.  Several months later, the plaintiffs filed the Fraud

Action in federal court, where it was consolidated with the Rent Action.  On the same day

that the federal Fraud Action was filed, the plaintiffs requested a discontinuance of the

state court action; that request was granted three days later.  Plaintiffs never filed a state

court complaint.

It is undisputed that, if the plaintiffs had filed a complaint in the state court action,

and if the defendants had successfully removed that case to federal court, the claims

would not be barred by the statute of limitations.  *See, e.g.*, *Heater v. Kidspeace*, No.

05-4545, 2005 WL 2456008, at *2 (E.D. Pa. Oct. 5, 2005).  The problem here is that the

Fraud Action is not a "continuous action" because it was not removed to federal court;

instead, it was re-filed as a separate action.  It is also undisputed that plaintiffs' federal

action is not tolled under the "savings statute," codified at 42 Pa. Cons. Stat. § 5535.[13]

Nevertheless, plaintiffs rely on state and federal caselaw that has allowed tolling under circumstances that plaintiffs find to be analogous to this case.  This argument would seem, as an initial matter, to be contrary to well-established precedent because "[t]he decisions rendered by both federal courts and Pennsylvania courts . . . indicate that the commencement of an action in a Pennsylvania court does not toll the statute of limitations applicable to a subsequent action commenced in federal court."  *Walstrom v. City of Altoona*, No. 3:2006-81, 2008 WL 5411091, at *10 (W.D. Pa. Dec. 29, 2008) (citing *Ravitch v. Pricewaterhouse*, 793 A.2d 939, 942 (Pa. Super. Ct. 2002)).  This proposition was first articulated by the Third Circuit in *Falsetti v. United Mine Workers of America*, 355 F.2d 658, 662 (3d Cir. 1966), in which the court rejected appellant's contention that his prior, unsuccessful, state court action served to toll the limitations period for his subsequently filed federal action.  *See also Royal Globe Ins. Co. v. Hauck Mfg. Co.*, 335 A.2d 460, 462 (Pa. Super. Ct. 1975) ("An action in state court does not toll the running of the statute of limitations against subsequent action in federal court." (citing *Falsetti*, 355 F.2d at 662)); *Ammlung v. City of Chester*, 494 F.2d 811, 816 (3d Cir. 1974) ("The running of a Pennsylvania statute of limitations against a federal cause of action is not tolled under Pennsylvania concepts of tolling by the commencement of a similar suit

---

[13]  Under § 5535(a)(1), if a party timely commences an action that is later terminated, that party may commence a new lawsuit on the same cause of action within one year of the termination.  But under § 5535(a)(2)(ii), the one-year grace period cannot apply to an action that, as in this case, was terminated by a discontinuance.

in state court." (citing *Falsetti*, 355 F.2d at 662)).  Still, plaintiffs seek to distinguish the

*Falsetti* line of cases on various grounds, each of which will be addressed in turn.

**A. Whether the federal action was filed as a "continuation" of the state action**

Plaintiffs place particular emphasis on the analysis and holding of *Holmes v.*

*Strawbridge & Clothier*, No. 94-1999, 1994 U.S. Dist. LEXIS 16394 (E.D. Pa. Nov. 16,

1994).  In *Holmes*, the plaintiff had filed various state law claims in Pennsylvania state

court.  While those claims were still pending, the plaintiff brought a separate action in

federal court that asserted the same claims that were pending in state court, along with a

related federal claim.  *Id.*  The court ruled that the state law claims in the federal action

were not barred by the statute of limitations, and that plaintiff was entitled to tolling

because the earlier state action was filed within the limitations period.  The *Holmes* court

distinguished the *Falsetti* line of cases on two grounds.  First, the court noted that "[those]

cases are inapplicable to the instant matter because this plaintiff's action has not been

dismissed by the state court."  *Id.* at *3.  Second, the court observed that in *Falsetti*, the

state law claims had been "fully adjudicated by the state court prior to plaintiff's re-filing

of identical state law claims in federal court.  Therefore, had the district court in *Falsetti*

exercised pendent jurisdiction over the state law claims in that case, it would have

provided a forum for the state law claims where none existed."  *Id.* (citation omitted).

The *Holmes* court reasoned that in the case before it, because the state action was still

pending, the exercise of federal jurisdiction over the state claims would not create a

forum where none existed.

In this case, the factors that distinguish *Holmes* from *Falsetti* and its progeny are not present.  Plaintiffs' state court action has, unlike the state court action in *Holmes*, been dismissed by the state court.[14]  Moreover, exercising federal jurisdiction over plaintiffs' claims *would* "provide a forum for the state law claims where none existed." This result is compelled by Pennsylvania tolling rules as codified at § 5535, *see supra* note 13, under which the filing of a prior state action will not toll the limitations period for a subsequently filed state action where the first action was terminated by a discontinuance.  *Williams Studio*, 550 A.2d at 1337.  In other words, if plaintiffs had filed a new action in state court after the discontinuance, that second state action would have been barred by the statute of limitations.  In sum, the procedural history of plaintiffs'

---

[14] Plaintiffs stress that their state action was still technically pending at the time the federal action was filed.  But this argument ignores the fact that the plaintiffs then immediately obtained a discontinuance of the state action.  (The federal action was filed on April 17, 2009, and the state action was discontinued on April 20, 2009.)  As a result of that discontinuance, "it is as if the original suit was never initiated," *Williams Studio*, 550 A.2d at 1335, and the *Falsetti* rule must still apply.  There was no such termination of the state suit in *Holmes*.  Under plaintiffs' reasoning, the well-established *Falsetti* rule could be circumvented simply by filing the federal action before dismissing the state action, instead of the more typical sequence in which a plaintiff dismisses the state action prior to filing the federal action.  Moreover, the Third Circuit has held that *Falsetti* still applies even if the state action is pending.  *See Soppick v. Borough of W. Conshohocken*, 118 F. App'x 631, 636 (3d Cir. 2004); *see also Morris v. Hoffa*, No. 01-3420, 2002 U.S. Dist. LEXIS 5975, at *10 (E.D. Pa. Apr. 8, 2002) ("[T]he filing of the praecipe to issue a writ of summons in the state court did not toll the limitations period for this federal action, where the [pending] state court action has not been removed to this Court, and where Plaintiffs filed a separate action in this federal court based on the same operative facts.").

federal action differs in material respects from *Holmes*, and the plaintiffs' reliance on that case cannot displace the *Falsetti* rule that a prior state action does not toll the running of the statute of limitations as applied to a subsequent federal action.[15]

## B. Whether the state dismissal and federal filing were done with the federal court's "imprimatur"

      Plaintiffs also argue that the present action cannot be barred by the statute of limitations because their dismissal of the state action, and refiling of the federal action, were done with the court's imprimatur.  For this proposition, plaintiffs rely on *Gilbert v. Feld*, 788 F. Supp. 854 (E.D. Pa. 1992).  But the facts of that case are entirely distinguishable.  In *Gilbert*, the plaintiffs filed a federal action within the limitations period.  Shortly after the filing of the first action, the court *instructed* the plaintiffs to file a new complaint "so that two related actions could be consolidated."  *Id.* at 862. Although the second complaint was filed outside of the limitations period, the court rejected the defendants' timeliness argument and ruled that "[t]he complaint in the present action satisfies the limitations requirements through its relationship to and derivation

---

[15] At various points, plaintiffs seek to buttress their theory that the federal action was merely a "continuation" of the state action by arguing that Judge Robreno "retained jurisdiction" over the state action after the September 24, 2008 remand order.  This contention has no basis in the record or in the law.  *Trans Penn Wax Corp. v. McCandless*, 50 F.3d 217, 225 (3d Cir. 1995) ("The general rule is that a district court loses jurisdiction over a case once it has completed the remand by sending a certified copy of the remand order to the state court."); 14C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 3739 at 902 (4th ed. 2009) (noting that, except with respect to a post-remand application for attorney's fees, "[i]t is clear . . . that . . . an order of remand to state court ends the jurisdiction of the federal court over a case").

from the [initial] complaint." *Id.*

Here, plaintiffs were not instructed to file the federal action, nor were they ordered to dismiss the state action. Still, plaintiffs place great emphasis on the discussion that transpired at the April 16, 2009, status conference. *See* Tr. of Hr'g (Dkt. 35). In that discussion, plaintiffs' counsel stated his intention to withdraw the state action and to file a new complaint in federal court, and he also stated his expectation that the new federal Fraud Action would be consolidated with the Rent Action that was pending before Judge Robreno. Defense counsel expressed no objections to this plan, and stated "I think it would be appropriate to consolidate the cases." *Id.* at 3:25. Judge Robreno similarly agreed that the cases should be consolidated under Rule 42. *Id.* at 16:12–18. In accordance with this discussion, plaintiffs filed their federal action the next day (April 17), Judge Robreno consolidated the cases, and plaintiffs were granted a discontinuance of the state court action on April 20.

As is apparent from the foregoing, plaintiffs were never ordered to re-file the federal action or to withdraw the state action. Instead, the dismissal and refiling were entirely voluntary. Judge Robreno's agreement to consolidate the two federal cases is not in any way equivalent to a court order to dismiss and re-file. Accordingly, plaintiffs' reliance on *Gilbert*—in which the court explicitly ordered the plaintiff to re-file a federal action so that it could be consolidated with another federal action—is misplaced.

The plaintiffs make a distinct, though related, argument that the statute of

-20-

limitations should be tolled pursuant to the Third Circuit's reasoning in *Brennan v. Kulick*, 407 F.3d 603 (3d Cir. 2005).  But that case also is inapposite.  In *Brennan*, the court held that "when a complaint is filed within the statute of limitations but is subsequently dismissed without prejudice in an order containing conditions for reinstatement within a specified time period, the statute of limitations is tolled provided that the plaintiff meets those conditions."  *Id.* at 607.  Here, the dismissal of the state action was indeed without prejudice, but it was not a "conditional dismissal" like the one in *Brennan* because there was no specified time period for reinstatement.  *Cf.* Pa. R. Civ. P. 231 ("After a discontinuance . . . the plaintiff may commence a second action upon the same cause of action upon payment of the costs of the former action.").  Accordingly, the dismissal of plaintiffs' state court action falls under the "general principle," as described in *Brennan*, that "'[a] statute of limitations is not tolled by the filing of a complaint subsequently dismissed without prejudice,' as 'the original complaint is treated as if it never existed.'"  *Id.* at 605, 606 (quoting *Cardio–Medical Assocs. v. Crozer–Chester Med. Ctr.*, 721 F.2d 68, 77 (3d Cir. 1983)).[16]  In sum, *Brennan*, like *Gilbert*, provides no

---

[16] The *Brennan* court observed that this distinction—between a dismissal without prejudice (i.e., a final dismissal) as opposed to a dismissal without prejudice *that includes a time limit for curing the deficiency* (i.e., a conditional dismissal)—was "sound" because "an order merely dismissing a complaint without prejudice could result in a significant period of delay prior to the bringing of a new action."  *Id.* at 607.  But with a conditional dismissal, "[t]he conditions specified in the order prevent a plaintiff from indefinitely extending the limitations period."  *Id.*  As noted above, in this case the discontinuance of the state action was not a conditional dismissal, and thus plaintiffs are not entitled to tolling under *Brennan*.

support for plaintiffs' contention that Judge Robreno's consolidation decision somehow tolled the statute of limitations.

**C. Whether plaintiffs have satisfied the purpose of the statute of limitations because any violation of the statute of limitations was a mere "technical misstep"**

Plaintiffs contend that even if the state court action did not toll the limitations period for the current federal action, the Pennsylvania Supreme Court's ruling in *McCreesh v. Philadelphia*, 888 A.2d 664 (Pa. 2005), requires that this defect be forgiven. In *McCreesh*, the court addressed uncertainty regarding Pennsylvania Rules of Civil Procedure 1007 and 401. Under Rule 1007, an action is commenced by filing either a writ of summons or a complaint; thus a plaintiff who complies with Rule 1007 within the limitations period has satisfied the statute of limitations. After filing a writ of summons or complaint, the plaintiff must serve process within 30 days. Pa. R. Civ. P. 401(a).[17] But if the plaintiff does not serve process within 30 days, "the claim remains valid so long as the plaintiff complies with the procedures of subsection (b), which allows for reissuance of the writ at 'any time and any number of times.'" *McCreesh*, 888 A.2d at 671. The operation of 401(b) creates a potential "anomaly" which the *McCreesh* court described as "allow[ing] a plaintiff to commence an action, thereby satisfying the statute of limitations, and yet delay the provision of notice of the claim to the defendant interminably, thus undermining the purpose of the statute of limitations." *Id.* (citing *Lamp v. Heyman*, 336

---

[17] Rule 401(a) provides: "Original process shall be served within the Commonwealth within thirty days after the issuance of the writ or the filing of the complaint."

A.2d 882, 888–89 (Pa. 1976)).

In *McCreesh*, the court sought to clarify prior precedent which allowed a writ of summons to remain effective to commence an action only if the plaintiff demonstrated a "'good faith effort to effectuate notice of commencement of the action.'" *Id.* at 672 (quoting *Farinacci v. Beaver Cnty. Indus. Dev. Auth.*, 511 A.2d 757, 759 (Pa. 1986)). Specifically, the court had to determine "whether to adopt the strict approach . . . which require[s] rigid compliance with the Rules of Civil Procedure in order to satisfy [the good faith requirement], or the more flexible approach . . . which allows for the continued validity of the writ despite non-compliance with the rules so long as the defendant received actual notice and was not prejudiced." *Id.* at 670. The court adopted the more flexible rule, reasoning that

> [n]either our cases nor our rules contemplate punishing a plaintiff for technical missteps where he has satisfied the purpose of the statute of limitations by supplying a defendant with actual notice. Therefore, [a trial court should] dismiss only those claims where plaintiffs have demonstrated an intent to stall the judicial machinery or where plaintiffs' failure to comply with the Rules of Civil Procedure has prejudiced defendant.

*Id.* at 674.

Plaintiffs seize on this passage from *McCreesh* and argue that, in this case, (1) any violation of the statute of limitations was merely a "technical misstep," (2) plaintiffs have complied with the purpose of the statute of limitations by providing notice to the defendants, and (3) there was no prejudice to the defendants. But plaintiffs' argument ignores the fact that *McCreesh* addressed only the question of what constitutes a good

faith effort to comply with Pennsylvania's service of process rules.  The plaintiff in

*McCreesh* had filed his suit within the limitations period, but had made a "technical

misstep" in effectuating service of process.[18]  In this case, by contrast, the federal action

was not filed within the limitations period, and there is no dispute about the sufficiency of

process.[19]  In other words, *McCreesh*'s interpretation of Rule 401(b) is not relevant to this

action because that rule—even if it did apply in federal court—is not at issue in this case.

Moreover, although the *McCreesh* court ruled that the plaintiff in that case had

"satisfied the purpose of the statutes of limitation," the same cannot be said of the

---

[18] Specifically, the plaintiff in *McCreesh* had failed to comply with the rules for service of
process because he had delivered a writ of summons by certified mail rather than by the
sheriff or a competent adult.  *Id.* at 667.  But the plaintiff had made a good faith effort to serve
process and the defendant, who had notice of the lawsuit, was not prejudiced.  The
question was wether the subsequent reissuance of the writ—which was followed by
proper delivery—was valid.

[19] Plaintiffs also rely on Pennsylvania Rule of Civil Procedure 126, which *McCreesh* also
relied on and which states:

> The rules shall be liberally construed to secure the just, speedy and
> inexpensive determination of every action or proceeding to which they are
> applicable. The court at every stage of any such action or proceeding may
> disregard any error or defect of procedure which does not affect the substantial
> rights of the parties.

Pa. R. C. P. 126.  But the requirement that the Pennsylvania Rules of Civil Procedure be
liberally construed cannot be interpreted as requiring that Pennsylvania *statutes* are to be
liberally construed.  Thus, plaintiffs' failure to comply with the statute of limitations,
codified at 42 Pa. Cons. Stat. § 5524(7), cannot be deemed an "error or defect of
procedure" that falls under Rule 126.  The distinction between compliance with the rules
as opposed to the statutes further underscores why *McCreesh* is inapposite: the plaintiff in
*McCreesh* failed to comply with the rules governing service of process, whereas the
plaintiffs in this case failed to comply with the statute of limitations.

plaintiffs in this case.  "[T]he 'purpose of any statute of limitations is to expedite litigation and thus discourage delay and the presentation of stale claims which may greatly prejudice the defense of such claims.'"  *Id.* at 671 (quoting *Ins. Co. of N. Amer. v. Carnahan*, 284 A.2d 728, 729 (Pa. 1971)).  Plaintiffs were on notice of their claims as far back as January 2007.  They first filed suit in New Jersey state court, then voluntarily dismissed that case on April 2, 2007.  Fourteen months later, on June 26, 2008, they filed the Pennsylvania action.  After defendants removed the case to federal court, the plaintiffs opposed removal and obtained remand to state court.  Ten months later, after completing pre-complaint discovery, plaintiffs filed the present federal action on April 17, 2009.

In light of these delays, permitting this action to proceed would undermine what *McCreesh* identified as the twin goals of statutes of limitations—(1) expediting litigation, and (2) ensuring that defendants do not have to defend against "stale claims."  Thus the statute of limitations not only bars the claims of plaintiffs who fail to file any action within the relevant period.  It also penalizes peripatetic plaintiffs, such as those in this case, who fail to make a timely decision about which court should hear their lawsuit.

**D. Whether plaintiffs' action was tolled under Pennsylvania Rule of Civil Procedure 401(b)(5)**

Pennsylvania Rule of Civil Procedure 401(b)(5) provides:

If an action is commenced by writ of summons and a complaint is thereafter filed, the plaintiff instead of reissuing the writ may treat the complaint as alternative original process and as the equivalent for all purposes of a reissued writ, reissued as of the date of the filing of the complaint. Thereafter the writ may be reissued, or the complaint may be reinstated as the equivalent of a

reissuance of the writ, and the plaintiff may use either the reissued writ or the reinstated complaint as alternative original process.

Under this rule, if a plaintiff files a writ of summons within the limitations period, and then files a complaint after the limitations period has expired, that complaint will be treated as though the writ had been reissued as of the date of the complaint, thus allowing the tardy complaint to satisfy the statute of limitations. *See, e.g.*, *Fox v. Thompson*, 546 A.2d 1146, 1148–49 (Pa. Super. Ct. 1988). Plaintiffs argue that the procedural history of this case fits the requirements of Rule 401(b)(5) because (1) plaintiffs filed a writ of summons in state court within the limitations period, and (2) plaintiffs "thereafter filed" a complaint in federal court.

It is true that Rule 401(b)(5) does not specify the type of "complaint" that must be filed, but it is clear that the rule applies only to complaints thereafter filed in *state court*. Rule 1007 specifies that, to commence an action, a plaintiff may "file with the prothonotary" a complaint or a praecipe for a writ of summons. Of course, the federal district court is not a prothonotary and so plaintiffs in this case have failed to "file" a complaint within the meaning of Rule 401(b)(5). Moreover, if plaintiffs' interpretation of Rule 401(b)(5) were correct, it would undermine the well-established *Falsetti* rule, discussed above, which provides that a state action does not toll a subsequently filed federal action. In sum, Rule 401(b)(5) cannot operate to toll plaintiffs' federal action.

**E. The relevance of Judge Angell's ruling that plaintiffs' amended complaint relates back to the date of the "original pleading"**

Plaintiffs' federal complaint, filed on April 17, 2009, named TRG, TRG the Pier, and TCI, as well as APA and the Gordon Defendants.  Plaintiffs later filed a motion to amend the complaint to add TaubCo as an additional defendant.  On August 30, 2010, Magistrate Judge Angell granted plaintiffs leave to amend.  Dkt. 101.  In doing so, Judge Angell also ruled that "the complaint satisfies the requirements for relation back under F.R.C.P. 15(c)."

Plaintiffs characterize Judge Angell's ruling as establishing that "all of the claims in the Plaintiffs' proposed Amended Complaint related back to the original pleading filed against TCI." Dkt. 112 at 48.  In so characterizing the ruling, plaintiffs imply that the claims against Taubco (which was added via amendment) relate back to the writ of summons filed against TCI (which was the only one of the Taubman Defendants named in the writ of summons).  Plaintiffs then make the argument that, because the amended complaint against TaubCo must relate back to the writ of summons, the amended complaint must also "relate back" as to all of the Taubman Defendants because they are "alter-egos" of one another.[20]

These contentions are not supported by Judge Angell's ruling.  Judge Angell's relation back ruling did not specify whether the amendment would relate back to the writ of summons or to the federal complaint.  Judge Angell noted that "[t]hough there is disagreement among the parties as to which 'original pleading' is the appropriate one for which this amendment [is] to relate back, it is evident that Taubco had notice of these proceedings within the

---

[20] This court's ruling on the Taubman Defendants motion to dismiss for lack of personal jurisdiction relied, in part, on a finding that TRG and TRG the Pier were "alter-egos" of TCI.  *See* Dkt. 98 at 6–9.

appropriate time frame, whether of the Writ of Summons or the Complaint filed in this action." Dkt. 101 at 10.  More importantly, the amendment could not have related back to the writ of summons because that writ was filed *in a separate action*. *See Neverson v. Bissonnette*, 261 F.3d 120, 126 (1st Cir. 2001) ("Rule 15(c) simply does not apply where . . . the party bringing suit did not seek to 'amend' or 'supplement' his original pleading, but, rather, opted to file an entirely new [action] at a subsequent date.").  Thus, the infirmity in plaintiffs' relation back argument is premised on the misperception that the federal action is a "continuation" of the state action—the same faulty premise that plaintiffs have relied on throughout their briefing on the limitations question.

**F. Whether the defendants have waived the statute of limitations defense**

Finally, plaintiffs argue that the defendants have waived the statute of limitations defense because the defendants (1) agreed that the Fraud Action could be filed in federal court and consolidated with the pending Rent Action, (2) were told by plaintiffs' counsel that they were re-filing in federal court to save defendants the time and expense of removal, and (3) never raised a statute of limitations objection during discussions about the re-filing plan.

Under Pennsylvania law, "[w]aiver is the voluntary and intentional abandonment or relinquishment of a known right." *Prime Medica Assocs. v. Valley Forge Ins. Co.*, 970 A.2d 1149, 1156 (Pa. Super. Ct. 2009).  "'To constitute a waiver of legal right, there must be a clear, unequivocal and decisive act of the party with knowledge of such right and an evident purpose to surrender it.'" *Commonwealth ex rel. Corbett v. Griffin*, 946 A.2d 668, 679 (Pa.

2008) (quoting *Brown v. City of Pittsburgh*, 186 A.2d 399, 401 (Pa. 1962)).

Plaintiffs' waiver argument relies exclusively on *Baranowski v. Waters*, No. 05-1379, 2008 WL 4000406 (W.D. Pa. Aug. 25, 2008), which, plaintiffs contend, is "on all fours in every material respect with the instant case."   But the facts of *Baranowski* are entirely distinct.   The plaintiff in *Baranowski* had filed a writ of summons in Pennsylvania state court, and had, without dismissing the state action, subsequently filed a federal action premised on the same claims.   *Id.* at *4.   During a status conference on the federal action, the presiding judge inquired whether the defense would raise the statute of limitations.   Defense counsel responded that "'although theoretically this case was filed out of time and is not technically linked to the act that is the state action, for me to claim that the statute of limitations bars it I think would be an error of technicality, and my clients and I would not do that.'"   *Id.* at *12 (quoting conference transcript).   Defense counsel in *Baranowski* made other representations to the same effect, both at the status conference quoted above and at a separate conference.

In light of these representations, the court found that "it is clear that the parties had decided . . . that it made no difference whether the praecipe had tolled the statute of limitations because, even if it had not, the Defendants had no intention of raising the issue." *Id.* at *13; *see also id.* at *10 ("[I]t appears that the parties reached an understanding that, in the interest of judicial economy, they would treat this case as a removed case in order to avoid additional costs and unnecessary delays.").   Accordingly, the court ruled that the defense had waived the statute of limitations argument.

-29-

In support of their waiver argument in this case, plaintiffs rely primarily on the transcript of the April 16, 2009 status conference.  Dkt. 35.  But nothing in the status conference reveals any affirmative waiver of the limitations defense.  Indeed, the statute of limitations is not mentioned by either party or by Judge Robreno.  Moreover, nothing in the transcript suggests that the parties had an understanding that the case would be treated as a removed case.  Defense counsel "agreed" that the Fraud Action could be filed in federal court, and that consolidation would be appropriate.  But consolidation under Rule 42 does not abridge the rights of the parties to assert any and all defenses that they would have had if the actions had remained unconsolidated.  Finally, the mere fact that defense counsel did not raise a statute of limitations objection cannot be construed as a waiver of that defense.

The plaintiffs also reference a letter sent to defense counsel on April 15, stating plaintiffs' intention to file a federal complaint.  Dkt. 90-2.  In that letter, plaintiffs' counsel stated, *inter alia*, that "[c]onsistent with my conversation with you upon close of state court discovery, I enclose herewith a copy of the federal complaint . . . that we intend to file in the United States District Court for the Eastern District of Pennsylvania, as a related case to your action . . . ."  Again, there is no mention of the limitations defense, nor any suggestion that the defendants asked the plaintiffs to re-file in federal court.  In short, none of the exhibits cited by the plaintiffs demonstrate a "voluntary and intentional abandonment or relinquishment of a known right."  *Prime Medica Assocs.,* 970 A.2d at 1156.

In addition to the transcript of the status conference and the letter to defense counsel,

plaintiffs also allude, in their briefing on this motion, to a phone conversation in which counsel discussed plaintiffs' intention to file in federal court.  Plaintiffs allege that, during this phone call, "Plaintiffs' counsel advised that it intended to re-file in federal court to save the Defendants the time and expense of removal . . . ."  Pls.' Opp. at 41 (Dkt. 112); *see also id.* at 18 ("Prior to [the status] conference, the Plaintiffs' counsel contacted Meyers, the attorney for the Taubman Defendants, and advised that he would file the Fraud Action in federal court, so as to avoid the necessity of a removal, which would cause a delay of at least 60 days.").  But even taking these allegations as true, they do not demonstrate that the defendants intentionally abandoned their right to raise a statute of limitations defense.

In sum, plaintiffs have failed to allege any facts or circumstances that are analogous to those in *Baranowski*, nor have they shown that the defendants "voluntarily and intentionally abandoned" the statute of limitations defense.  Accordingly, plaintiffs' waiver argument is unavailing.

\* \* \* \*

For the foregoing reasons, the court finds that plaintiffs' claims against the Taubman Defendants are barred by the statute of limitations.  The motion to dismiss will be granted, and the complaint will be dismissed as to these defendants only.  An appropriate order accompanies this opinion.